S. V. SMITH, Respondent v. CALENDONIAN IN-
SURANCE COMPANY OF SCOTLAND, Appellant.

Kansas City Court of Appeals, February 12, 1917.

1. FIRE INSURANCE: Damages: Repairs. Where fire insurance is placed on a building, which is afterwards vacated and the owner determines to alter the building, and places materials on the ground thereof, and the building is destroyed by fire, the owner can re-

cover the amount of the insurance, where permission is granted in the policy to make additions, alterations and repairs. The words "permission granted to complete" in the defendants' insurance policy refers to the completion of the alterations of the building, and not to the complettition of a building in course of construction.

2. ——: ——: ——. Materials such as boilers, brick and timbers, when assembled on the premises for the purpose and intention of being incorporated into the building, as in this case should be treated as a part of the realty in case they are burned while so assembled.

Appeal from Jackson Circuit Court.—*Hon. William O. Thomas*, Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

*Cook & Gossett* for respondent.

BLAND, J.—This is a suit on a fire insurance policy; the material parts of which are as follows:

"In consideration of  .  .  .  does insure S. V. Smith .  .  .  for a term of three years from December 2, 1914,  .  .  .  against all direct loss or damage by fire  .  .  .  to an amount not exceeding thirty-five hundred ($3500) dollars, to the following described property  .  .  .  to-wit:

$3500——— On the ————— roof building and additions, including windows, door screens and awnings, gas and electric light fixtures, plumbing, heating apparatus and connections, elevators, their machinery and appurtenances, skylights, plate and art glass, frescoing and wall decorations, engines, boilers, their settings and appurtenances, and all permanent improvements therein, including material entering into the construction of same and thereon, stone and prismatic sidewalks, adjoining, occupied for Mercantile and situate Nos. 535-539 Westport Avenue, Kansas City, Mo. Permission granted to complete.

Other insurance permitted. Notice of incumbrances waived.

Privilege granted to make additions, alterations and repairs, using materials and processes incident thereto (and it is understood that this insurance shall also cover new work and materials therefor); . . . . This entire policy shall be void . . . if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time.''

The undisputed evidence shows the following facts concerning the property insured; that thirteen years before the trial, plaintiff bought the lot upon which the building destroyed was situated and two years thereafter he leased the same to the Whitney Lumber Company. This company immediately built a lumber shed, 90 x 102 feet, composed of wood, which covered a portion of the lot. The east and north walls of said lumber shed were supported by stone foundation walls. About six or seven years before the trial the Whitney Lumber Company vacated the premises and thereafter the building was used by plaintiff for the purpose of storing goods; that a short time before the insurance was written, stone basement walls were erected on the south and west side of the building, so that at the time the policy was written there were basement walls on all four sides. The south and east walls had openings indicating they were not entirely finished.

The evidence further shows that before the issuance of said policy plaintiff had constructed a brick wall, ten (10) or twelve (12) feet high, on the foundation on the south side, which wall extended to within two or three feet of the roof, and that he had built turns in this brick wall at each end, to the north on the east and west foundation walls respectively.

The evidence further shows that some sills consisting of heavy timbers had been placed on these foundation walls. The frame part of the building consisted of a boxed frame wall on the east side and open frame work on the west side; in the northeast part of the building plaintiff had finished a room, twenty (20) by fifty (50) feet, which was used for a restaurant, fruit

stand and cigar store; said room was all enclosed and floored; that the rest of the building was mostly open and was equipped with lumber racks and had little flooring. However, the entire building was covered with a gravel roof.

At the time of the fire plaintiff had in the building and piled on the street level floor about forty thousand (40,000) brick, mostly second hand, and on his lot, but outside of the structure, he had about seven thousand (7000) brick and two large steam boilers; the boilers and most of the brick had been bought second hand and were intended to be put into the building. The boilers were resting on timbers ruined by the fire. A total loss of the building and material was suffered by a fire occurring April 19, 1915.

Plaintiff's contention was that the insurance was written to cover a roofed in and enclosed building which had been undergoing alteration, which he comtemplated continuing at his convenience, and which alteration he had permission to make by the terms of the policy.

The defendant maintained that the policy did not insure a building but a structure then being erected, later to become a building, and, in the meantime, the material assembled and to be assembled there to complete the construction of the building; and further claimed that for these reasons defendant's liability was thirty-five hundred (3500) dollars, less the amount it would have cost to complete the building had the fire not occurred.

Defendant introduced no testimony save some photographic exhibits. The oral evidence consisted of the testimony of two witnesses produced by plaintiff, including himself, and they testified to the foregoing facts relative to the condition and character of plaintiff's structure. It is quite apparent to us that the structure was originally a frame building and that plaintiff had altered it from time to time by making portions of it more substantial, so that at the time the policy was written plaintiff had reached a stage in the alteration of the building where he had gotten his

foundation or basement walls in, and a portion of one of the first story walls over the foundation. The evidence shows that a portion of the frame structure rested on these foundation walls, and from the evidence we have concluded that the whole work, both frame, stone and brick, composed one structure.

Plaintiff testified that it was his intention to gradually alter the building until he would have a two-story brick and stone building. It is quite evident, then, that the property insured was not a building being constructed or an unfinished building to be completed, but an entire and complete building in use and undergoing alteration, and that such building was insured by the policy for the specific sum of thirty-five hundred ($3500) dollars.

Defendant contends that the clause in the policy which says "permission granted to complete" shows that it was understood by the parties that the building was an incompleted structure in the course of construction and if it had been a building in the course of alteration such terms would not have been used. In view of the whole policy and the condition and character of the structure covered by it, it is quite clear to us that the words "permission granted to complete" referred to the completion of the alterations of the building and not to a completion of a building in course of construction.

Defendant contends that because the policy provides that work on the alteration shall not extend over a longer period than fifteen days at any one time, and as plaintiff intended to change the building by adding two new floors of brick construction, that it would be inconsistent to say that the parties contemplated that the structure was a complete building in course of alteration. As the plaintiff had as many fifteen day periods to work in as he chose to use, we see nothing inconsistent in the idea that the building was one in course of alteration. Therefore, the court below correctly excluded testimony, and refused defendant's instructions based thereon, offered upon defendant's theory as above outlined.

Plaintiff, below, recovered for the loss of the brick, timbers and boilers, on the theory that the same, having been assembled on the premises for the purpose and intention of being incorporated into the building, became a portion of the realty as soon as so assembled. While defendant's theory was that said material, while covered by the policy, was covered as material only and therefore personalty and not as part of the building and realty. As the extent of liability for loss of a building and loss of personal property is determined by different rules (Sections 7020 and 7030, R. S. 1909), it is necessary for the court to determine which of the two foregoing contentions is right.

The policy insures everything mentioned therein for thirty-five hundred ($3500) dollars. It is clear that the object of the insurance is to insure real estate, namely, a building in course of alteration. The insurance of material to be used to alter the structure is a mere incident to the insurance of the structure which is being altered. It seems to us that had the company intended to insure as personal property any part of the property covered, it would have insured it as such and would not have insured it as a part of the amount, to-wit, thirty-five hundred ($3500) dollars, placed on the realty. The reason of this is obvious; for if the material be classed as personalty, being in the policy included with real estate, there is no certain method of determining either the value of the property or the amount of the loss as fixed by the statutes of the State. As to realty (in case of fire), the property is taken as worth the amount for which it is insured by the policy less any deterioration that it may have suffered between the date of the issuance of the policy and the date of the fire, and the burden of proving such deterioration, if any, is on the insurer. [Section 7020, R. S. 1909; Stevens v. Ins. Co., 120 Mo. App. 88; Havens v. Ins. Co., 123 Mo. 403.] While, on the other hand, as to personalty, the property is taken as worth not the amount for which it is insured but the

amount of insurance is conclusively presumed to be only three-fourths of its value, as the Statutes provide that "no company shall take a risk . . . at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding." [Section 7030, R. S. 1909.] And in case of loss the burden of proof is on the insured to show there was no depreciation of such personal property between the time of the issuance of the policy and the fire. [Stevens v. Ins. Co., supra.]

So we find not only different methods of arriving at the value of real estate and personal property, but, in addition, we find that the burden of proof as to the value of real property is different from such burden as to the value of personal property.

The policy reads that the insurance was to be thirty-five hundred ($3500) dollars and was to insure the building and the additions, and that such building and additions were to include "windows, door screens . . . engine boilers . . . and all permanent improvements therein, including material entering into the construction of same and thereon." . . . "Privilege granted to make additions, alterations and repairs, using materials and processes incident thereto (and it is understood that this insurance shall also cover new work and materials therefor)."

From the language of the policy, and from the above considerations of it, we cannot but conclude that it was the intention of the parties that material, such as the boilers, brick and timbers in controversy, when assembled on the premises for the purpose and intention of being incorporated into the building, should be treated as a part of the realty in case they were burned while so assembled.

Defendant contends that no value is fixed on the property insured by the policy, giving as a reason therefor that the policy reads "does insure S. V. Smith . . . to an amount *not exceeding* thirty-five hundred ($3500) dollars." While it is true that this language, taken alone, means that the insurance might be as much

as thirty-five hundred ($3500) dollars, or it might be less, the matter is made definite by the language used later in the policy wherein it is definitely stated that the amount on the specific property mentioned in the policy was to be thirty-five hundred ($3500) dollars. Construing together all of the language of the policy, it is clear that it means that the property was insured for thirty-five hundred ($3500) dollars, but *not exceeding* that amount.

Defendant complains that instruction No. 1, given on behalf of plaintiff, was erroneous because it assumed plaintiff to have been the owner of the property in question, both at the time the policy was issued and at the time of the fire, and that it assumed the policy in question was in force and effect at the time of the fire. Defendant says that all of these things were put in issue by the answer. While these were not contested points at the trial, we find evidence in the record that plaintiff was the owner of the property in question at both of said times, and that the policy was in force and effect at the time of the fire.

Judgment is affirmed.     All concur.