BROCKMAN COMMISSION COMPANY, Respondent, v. KILBOURNE, Appellant.

St. Louis Court of Appeals, March 21, 1905.

1. **CONFLICT OF LAWS: Statute of Frauds: Sales.** A verbal contract made in Illinois for the sale of goods for more than $30.00, to be shipped to Missouri, is an Illinois contract and is not within the Missouri statute of frauds.

2. **PRACTICE: Weight of Evidence: Trial Courts.** It is the duty of trial courts to supervise the verdicts of juries and set them aside when contrary to the evidence; where there is substantial evidence to support a verdict which the trial court has refused to set aside, the appellate court will defer to the finding of the jury.

3. **SALES: Cancellation of Contract: Consideration.** The cancellation of a contract to sell and deliver goods requires a consideration to support it, but an agreement not to deliver on one side and an agreement not to receive on the other would be a sufficient consideration.

4. **PRACTICE: Affirmative Defense: Burden of Proof.** In an action for breach of contract where the defense offered is the rescission of the contract, it was proper to instruct the jury that such defense was an affirmative one and devolved on the defendant to prove it by a preponderance of the evidence.

Appeal form St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Abbott & Edwards* for appellant; *Sullivan & Jarrett* of counsel.

*Charles B. Stark* for respondent.

(1) There is evidence to support the finding of the jury, and it is well settled that, in actions at law, the court will not reverse the judgment on the weight of the evidence. Chadwick v. Bumpus, 45 Mo. 111; Garneau v. Hertel, 15 Mo. 191; Bray v. Kremp, 113 Mo. 552, 21 S. W. 220; Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149.

(2) The appellate court will not reverse a judgment, merely because in its opinion there is an insufficiency of evidence, if the testimony tends to establish the facts found by the jury. Moore v. Railroad 73 Mo. 438; Degge v. Express Co. 64 Mo. App. 102; Price v. Ins. Co., 48 Mo. App. 281, 296.

(3) When the solution of an issue of fact in an action at law depends upon the credibility of witnesses whose testimony is conflicting, the appellate court will not review the verdict on the ground that it is opposed to the evidence. Rich v. Fendler, 55 Mo. App. 236; MacAfee v. Ryan, 11 Mo. 364; Zallee v. Hilger, 3 Mo. App. 599; Murdock v. Brown, 16 Mo. App. 549.

STATEMENT.

Plaintiff is a corporation doing business in the city of St. Louis, Missouri. Defendant is member of a partnership doing business under the firm name of C. H. Weaver & Co., in the city of Chicago, Illinois.

The petition is in two counts; for cause of action the first alleges "that on or about the month of May, 1897, the defendant at the said city of Chicago, acting as a member of the said firm of C. H. Weaver & Co., and on its behalf, undertook and contracted to and with the plaintiff, to sell and deliver to the plaintiff in the said city of Chicago, in the month of July, 1897, twelve thousand (12,000) pounds of dairy butter in two hundred (200) tubs, containing sixty (60) pounds in each tub, at the price of eight and one-half (81-2) cents per pound. The defendant and his said firm violated the said contract and undertaking, and failed and refused to deliver the said butter or any part thereof, to the plaintiff, though the plaintiff frequently demanded the same, to the plaintiff's damages in the sum of seven hundred and twenty ($720) dollars."

The second count alleges, in substance, that under a contract to sell and deliver plaintiff two hundred boxes of Australian ladle packed butter, the defendant shipped from Chicago, Illinois, to plaintiff, at St, Louis, Mo. ten boxes of such butter to be inspected by the plaintiff and if not found satisfactory to be returned to the Weaver Company, the company to pay freight charges both ways; that the plaintiff paid the freight ($2.35) from Chicago to St. Louis, inspected the butter, found it unsatisfactory and returned it to Chicago.

The answer, omitting caption, is as follows:

"Defendant for his answer to the first cause of action in plaintiff's amended petition says, that the contract described in said first count was a parol contract for the sale of goods, wares and merchandize, for a price exceeding the sum of thirty ($30) dollars; that no note or memorandum in writing was made of the bargain and signed by the defendant, or his agent lawfully authorized; that no part of the goods so sold were accepted and received by the plaintiff, and that nothing was given in earnest to bind the bargain, or any part payment thereof.

"Wherefore defendant asks to go forward with his costs.

"And for a second and further defense to said first cause of action, defendant says that said contract was a parol contract, and that on or about the seventeenth day of July, 1897, plaintiff by its president and duly authorized agent and defendant, for and in consideration of the agreement on the part of defendant not to require the plaintiff to receive said goods, and for and in consideration on the part of the plaintiff and of the agreement on the part of the defendant to release it from said contract, said contract was by mutual agreement rescinded, and then and thereby became of no force and effect.

"And further answering said first cause of action in plaintiff's amended petition, defendant denies each and every allegation therein contained, not heretofore expressly admitted.

"And for answer to plaintiff second cause of action, in said amended petition contained, defendant denies each and every allegation therein contained.

"Wherefore, having fully answered, defendant asks to go hence with his costs."

A reply was filed putting in issue the new matter in the answer.

The evidence of both parties shows that a verbal contract was made at the city of Chicago, at the time alleged in the petition, whereby defendant's firm agreed to sell and deliver to plaintiff two hundred sixty-pound tubs of No. 2 dairy butter at eight and one-half cents per pound. At the time the contract was entered into defendant's firm did not have the butter on hand, but it was agreed that the butter might be shipped to plaintiff at any time within the following three or four weeks and when it was on hand, Weaver & Co., would notify the plaintiff and plaintiff should go to Chicago and inspect the butter, which was to be equal to a sample

shown plaintiff's agent on the day the bargain was made. In the course of three or four weeks plaintiff received a telegram from defendant's firm notifying it that the two hundred tubs of butter was ready for inspection and delivery and to come to Chicago and inspect it. F. W. Brockman, president of plaintiff corporation, testified that he received the telegram and on the evening of the same day started to Chicago and on arriving there went to defendant's place of business; that some butter was shown him put up in tubs and tin cans, ranging in weight from ten to fifty pounds, but it was of very bad quality and he refused to receive it; that he was then shown about thirty tubs each containing sixty pounds of butter, which he also inspected and found to be old and strong, and he then and there notified defendant that he would not receive any of the butter shown him for inspection; that the defendant said: "I am sorry and we will consider the trade off." Witness testified that he replied: "No, I want the goods and will hold you to the bargain." That defendant then showed him some Australian ladle packed butter and offered to sell him two hundred boxes of it; that he sampled some of it and agreed that plaintiff would take two hundred boxes of the Australian butter, corresponding to sample, but as the two hundred boxes were not on hand defendant agreed to ship plaintiff ten boxes in a few days, subject to plaintiff's inspection, and if found inferior to the sample plaintiff might return it, defendant to pay frieght charges both ways; that the ten boxes were shipped, the freight was not prepaid and in order to have an opportunity to inspect it plaintiff had to pay and did pay the freight ($2.25) ; that on inspection the butter was found old and rancid and was immediately shipped back to defendant's firm; that in June and July, 1897, No. 2 dairy butter was worth from twelve to twelve and one-half cents per pound. Brockman testified that after returning the Australian butter, he sent a bill to defendant asking one hundred and eighty dollars as damages for

the failure of his firm to deliver the two hundred sixty-pound tubs of No. 2 dairy butter, as per contract, and for $2.25 for freight paid on the ten boxes of Australain butter.

The defendant's evidence tends to show that when Brockman went to Chicago to inspect the butter, the defendant's firm had two hundred sixty-pound tubs of No. 2 dairy butter corresponding to the sample shown Brockman when the bargain was made; that Brockman inspected the butter but objected to it, and defendant then said to him, "Well, I am sorry that don't suit you and we will have to consider the trade off;" and Brockman replied, "Very well, let it be off;" that defendant then showed him some butter packed in smaller tubs, but it did not suit Brockman and he then showed him the Australian butter. Defendant's evidence further tends to show that in June and July, 1897, No. 2 dairy butter was worth from eight to eight and one-half cents per pound.

Defendant's evidence in respect to the cancellation of the contract and in respect to the market value of butter in June and July, 1897, was corroborated by several other witnesses. Brockman was the only witness who testified in behalf of the plaintiff. The jury found for plaintiff and assessed its damages at one hundred and eighty dollars on the first count, and at $2.35 on the second. Nine cents of the damages assessed on the second count was remitted by plaintiff, and the judgment was rendered for $182.24. Defendant appealed in the usual way.

BLAND, P. J. (after stating the facts).—The contract was an Illinois contract and our Statute of Frauds pleaded by defendant is inapplicable to the transaction, and it is not contended by appellant that the contract, as made, is within the statute. His contention is that no completed contract was entered into. We do not think this contention finds support in the evidence.

Brockman's testimony is that he was shown a sample of No. 2 dairy butter and that it was agreed between him, representing the plaintiff, and defendant, representing his firm, that the firm would sell and the plaintiff would buy two hundred tubs of No. 2 dairy butter, corresponding to sample shown, at eight and one-half cents a pound, the tubs to contain sixty pounds each, the butter to be delivered within three or four weeks, after being inspected by plaintiff before shipment. The price, the quantity and the grade were all agreed to. The exact time of the delivery was not fiixed but was to be within three or four weeks, or within a reasonable time. Nothing was said about when payment should be made; when this is the case the presumption is that the payment is to be made in cash on delivery, so that all the terms of the sale are fixed and certain, except as to the exact date of delivery and that is fixed with sufficient certainty to show that it was to be made within a reasonable time. We think, therefore, the evidence clearly shows that defendant's firm agreed to sell, and plaintiff agreed to buy, two hundred sixty-pound tubs of No. 2 dairy butter, plaintiff to pay eight and one-half cents a pound on delivery, the butter to correspond with the sample shown and to be delivered within a reasonable time. This embraces all the essential elements of a valid contract of sale, and defendant's firm was bound to make or tender delivery of butter corresponding to sample shown Brockman within three or four weeks. Brockman's evidence is that the butter defendant offered him did not correspond with the sample, in fact, the defendant had only thirty sixty-pound tubs of butter when it offered to deliver the butter or offered it to him for inspection. On the other hand, defendant's evidence is that the firm had two hundred sixty-pound tubs of No. 2 dairy butter on hand that corresponded with the sample but plaintiff refused to accept the same, so, it appears by the evidence of both parties that the transaction was treated as a sale of two hundred sixty-pound tubs of No. 2 dairy butter.

In other words, the defendant's evidence shows that the contract was made and that he offered to fill the contract by submitting to Brockman for inspection the whole number of tubs agreed to be sold, containing butter of the grade mentioned in the contract and corresponding with the sample shown to Brockman at the time the contract was made. The issue, therefore, was not whether or not there was a contract but whether or not the defendant's firm complied with, or was in a condition to and offered to comply with the contract. Defendant also offered evidence that at the time Brockman declined to receive the butter for the alleged reason that it did not correspond to sample, it was then and there agreed that the contract of sale should be cancelled. Brockman denied this and stated that he then and there notified defendant that he would hold his firm to the contract.

Brockman testified that, in June and July, 1897, No. 2 dairy butter was worth from twelve to twelve and one-half cents per pound. Defendant's evidence is that during those months this grade of butter was worth from eight to eight and one-half cents per pound. If worth no more than eight or eight and one-half cents per pound during the period in which delivery might have been made under the terms of the contract, the plaintiff suffered no substantial damage and its recovery on the first count should have been for nominal damages only, but the contradiction in the evidence as to the market value during the delivery period raised an issue of facts for the jury. This issue and all the other issues of fact, the jury found for plaintiff on the evidence of Brockman alone and against the defendant's evidence, which might seem to outweigh that of Brockman for the reason it was corroborated by other witnesses. But it is not in our province to weigh the evidence. We are bound to defer to the finding of the jury, if there is substantial evidence to support it. Brockman's evidence made out a clear prima facie case for the plaintiff ' on

the merits and showed that the plaintiff suffered substantial damages, and it is no concern of ours how strong the countervailing oral evidence was. It is the duty of trial court to supervise the verdicts of juries and set them aside when contrary to the evidence; and the appeal to set aside the finding of the jury, made to this court by defendant's counsel, should have been made to the circuit court. Insurmountable legal barriers stand between us and the right to set aside the verdict of a jury on the ground that it is against the weight of the evidence, therefore, if the instructions are not erroneous and no prejudicial error was committed on the trial, the judgment should be affirmed.

Defendant assigns as error the giving of the following instructions for plaintiff:

"1. If you believe from the evidence that at the city of Chicago, in the State of Illinois, in the month of May or June, 1897, the firm of C. H. Weaver & Company entered into a contract with the plaintiff whereby it promised to sell and deliver to the plaintiff in their place of business in the said city of Chicago, within a reasonable time thereafter, at the price of eight and one-half cents per pound, twelve thousand pounds of number two dairy butter, put up in two hundred sixty-pound tubs, and to be of the quality of the samples then exhibited to the plaintiff's president, and that he was to be the judge to determine whether the goods offered in fulfillment of the contract were of the grade and quality of the said samples, and if you further believe the goods offered were not of the grade and quality contracted for or were not put up in sixty-pound tubs, or were rejected by the plaintiff's president for either of these causes, you will find a verdict in favor of the plaintiff on the first count of the petition, unless you find from the evidence that at or after the time of the rejection of the goods by the plaintiff's president, if you so find they were rejected, he agreed to cancel and set aside the said contract and waive and discharge all damages arising

from the non-fulfillment of the contract, if any, which agreement to be binding on the plaintiff must have been supported by some consideration of value moving from the defendant to the plaintiff, and they are further instructed that an agreement not to deliver, on the one side, and an agreement not to receive, on the other, would be sufficient consideration, if they so find, to support an agreement to cancel said contract.

"2. Before you can find a verdict in favor of the defendant on the first count on the ground that the parties to the contract sued on by the plaintiff in that count was, for a valuable consideration, rescinded as explained in another instruction, you must find that the defendant has maintained that defense by the greater weight of credible evidence in the case, for that being an affirmative defense, the burden is on him to satisfy you of the truthfulness thereof by the greater weight of credible evidence."

Defendant has pointed out no special error in instruction 1, and we are unable to preceive wherein it is erroneous. His objection to the second instruction is that it required him to prove his defense to the first count "to the satisfaction of the jury." This phrase is not in the instruction. The instruction declares the law to be that the defense referred to is an affirmative one and it devolved on defendant to prove it by a preponderance of the evidence. This was certainly a correct declaration of law.

It was shown on the trial that before the beginning of the suit defendant made overtures to Brockman to settle the controversy. Plaintiff's attorney was unseemly persistent to get the proposition of compromise before the jury, but it was not permitted to go to the jury as evidence in the case. While we must condemn the effort of plaintiff's counsel to cross-examine defendant in respect to his overtures to Brockman to compromise, we are not prepared to say, in opposition to the ruling of

the learned circuit judge, that defendant was prejudiced by the action of plaintiff's attorney.

Discovering no reversible error in the record, the judgment is affirmed. All concur.