GEORGE A. LAXTON, APPELLANT, v. RETAIL HARDWARE MUTUAL FIRE INSURANCE COMPANY, RESPONDENT.—48 S. W. (2d) 144.

Kansas City Court of Appeals.   February 29, 1932.

*Don C. Carter* for appellant.

*Harris, Price & Alexander* for respondent.

BLAND, J.—This is an action on two policies of fire insurance. The case was tried before the court without the aid of a jury, resulting in a judgment in favor of defendant. Plaintiff has appealed.

The material facts, which are undisputed, show that on March 4, 1929, defendant insured against fire plaintiff's stock of hardware and fixtures located at Sturgeon. There were two policies totalling $15,000, of which $500 was upon plaintiff's fixtures and $14,500 upon his stock. On March 30, 1929, the property was destroyed by fire. On April 2nd of that year defendant's adjuster met with plaintiff and they agreed that the actual value of the fixtures at the time of the fire was $624, the stock of hardware $13,789.32, and that the loss was total. Thereupon, plaintiff filed and swore to proofs of loss fixing and declaring his loss on the fixtures and stock of hardware at the sums aforementioned. He made a claim for $500 on the fixtures and $10,304.87, on the stock of hardware, being three-fourths of the value on such stock at the time of the fire. The policies contained what is know as a "three-fourths value" clause, by the terms of which the insurer was liable to pay only three-fourths of the actual value at the time of the fire of the goods destroyed.

The amount of the losses was arrived at upon the calculations of the adjuster. He based his calculations, as to the stock of goods, by beginning with plaintiff's inventory made upon the preceding January 1st, and then making proper additions and deductions, which he claimed was the proper way to arrive at the actual cash value of the merchandise at the time of the loss. He stated that was "what the company required in making a settlement."

With reference to the adjustment on the basis of the three-fourths value clause, plaintiff's agent, who represented him in the matter, stated to the adjuster:

" 'What about that three-fourths value clause—are you going to take one-fourth of this amount of goods away according to that?' " and he said, " 'Yes, that is the law in this State and the only settlement I can make—take off one-fourth.' "

"Q. In other words, he refused to figure your loss at a greater amount than three-fourths of this amount? A. That is right."

On April 12th, a few days after the proofs of loss reached defendant at Owatonna, Minnesota, defendant sent its check to plaintiff in the amount for which the loss had been adjusted, with releases for him to sign. On April 17th, plaintiff wired defendant asking that the claim be held open for further discussion but that he be allowed to cash the check to pay his creditors. In response defendant wired that if the adjustment was wrong plaintiff must return the check "with explanation." On the same day that defendant wired plaintiff it wrote him a letter referring to the telegrams and expressing surprise that plaintiff was not satisfied with the adjustment, and stating:

"Of course, if there has been any error made, we shall be more than glad to do anything that we can to rectify it, but if there is to be any further discussion about the amount of the loss, it must be definitely settled before you cash our check. If you have any complaint to make in connection with the way in which our adjusters handled your claim, we shall be glad to have you write us about it in detail."

On April 19th, before plaintiff received defendant's letter of the 17th, but after receiving defendant's telegram, plaintiff wrote defendant that he had cashed the check "and am enclosing the receipts and policies herewith;" that the reason he had wired defendant was that:

"One of our friends (plaintiff's attorney) advised us that we might collect the full amount of our loss and we went to the Insurance Department of the State of Missouri and they advised us that your three-fourths clause would not hold good in Missouri and that we might collect the other fourth."

The letter further stated that there would be no lawsuit and

"Please do not hold the matter open further but merely through courtesy advise us concerning these matters so we can have the truth about them."

On April 23rd, defendant wrote plaintiff expressing surprise that the Missouri Insurance Department had advised plaintiff that the three-fourths value clause "would not hold in Missouri" and that defendant understood that such a clause was mandatory. Defendant further said:

"This is the first time in our experience that this question has come up, and before giving you any definite answer, we wish to in-

vestigate the matter. If we were wrong in placing the three-fourth value clause on your policy, you may rest assured that we shall be glad to reopen the adjustment and give you all that you have coming to you. Just as soon as we have completed our inquiry, we shall take this matter up with you again.''

On April 24th, plaintiff wrote defendant highly praising its fairness in the matter and stating:

''We are perfectly willing to let you investigate the matter and when you advise us we will take your findings as final.''

Defendant investigated the matter and found that the Insurance Department had not advised plaintiff as he claimed. On May 1st, defendant wrote plaintiff, enclosing a copy of the letter from the Insurance Department, and stating ''there is nothing further that we can do about the matter.''

Plaintiff thereafter brought this suit claiming a balance due of $4,195.13. This amount, in the words of plaintiff is, ''the difference between the amount of insurance $15,000 and the amount paid, $10,804.87, on the theory that the three-fourths value clause was not valid, and because if the adjuster had calculated the value of the stock of merchandise on the right theory, that is, to begin with the value of the stock at $15,000 as of March 4, 1929, the date of the insurance, then the actual cash value of the stock at the time of the fire was $17,093.69, and appellant was entitled to a full settlement of $15,000, the amount of the insurance carried. And further, that if the three-fourths value clause was valid, then appellant was entitled to a judgment of $2,015.40, being the difference between the amount of the draft, $10,804.87, and the amount of the actual cash value of the stock, after one-fourth had been deducted therefrom, or $12,820.27.''

The amount of $2,015.40 is based upon what plaintiff claims to be a proper calculation as to the actual loss, regardless of the three-fourths clause, in that, the adjuster took, as his basis for the calculation of the loss, the inventory made on January 1st, whereas, plaintiff claims the proper basis is the amount of insurance upon the property on the date of its issuance, deducting therefrom the difference between the additions to the stock by way of purchases and the sales and also the depreciation. The evidence shows that plaintiff took February 21, 1929, as being the date of the policies of insurance, whereas, the insurance policies were dated March 4th. However, in view of our disposition of this case, this is immaterial.

Defendant pleaded that there had been an accord and satisfaction and one of the questions to be determined is whether or not the settlement made by defendant with plaintiff constitutes a defense based upon that theory.

958

Plaintiff seeks to void the releases executed by him on four grounds:

"1st. Because the amount due appellant under the policies of insurance was not a disputed or unliquidated amount, such as brings into consideration the doctrine of accord and satisfaction.

"2nd. Because said alleged accord and satisfaction lacks consideration to support it.

"3rd. Because appellant accepted said payment under a mistake of fact, believing that was all he was entitled to under the law, and because the adjuster told him that amount was the total amount he was entitled to under the law.

"4th. Because respondent waived the accord and satisfaction, if any existed, by reopening the settlement and adjustment of loss with appellant, subsequent to the receipt and cashing of said draft."

Plaintiff further claims that, there being no accord and satisfaction, he is entitled to recover the sum of $4,195.13, for the reason that the three-fourths value clause in the policies is void and even should it be decided that the clause is valid this recovery should be $2,015.40 for the reasons already stated.

The first point for determination is whether or not there was, in fact, an accord and satisfaction. We think that plaintiff is mistaken in claiming that the amount due plaintiff under the policies was liquidated. Of course, a claim may be liquidated in amount and there may still be an accord and satisfaction by the receipt of a smaller amount by the creditor, if the claim, itself, as distinguished from its amount, is disputed and the settlement made in view of the dispute, but no such situation is here present. The sole point is whether the amount of the claim itself was liquidated. Of course, if it was liquidated, there was no accord and satisfaction by the acceptance by plaintiff of the check in question. [Ellis v. Mansfield, 215 Mo. App. 292.] It is true that under the provisions of section 5829, Revised Statutes 1929, the company is not permitted to deny that the property insured was worth, at the time of the issuance of the policies, the full amount of the insurance thereon. But this merely prevents the insurer from denying, at the time of writing the policies, that the property was worth the amount for which it was insured. It does not fix the amount of the loss and, under the statute, it is still necessary for plaintiff to show the amount of his loss at the time of the fire. [Curtis v. Indemnity Co., 37 S. W. (2d) 616, 627; Smith v. Ins. Co., 195 Mo. App. 379, 384, 385; Parson v. Strawbridge, 193 Mo. App. 687; Avery v. Ins. Co., 280 S. W. 726.] It is, therefore, quite apparent that the amount of plaintiff's recovery was not liquidated by the agreement of the parties made in the contract of insurance.

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction, in the absence of fraud, artifice, mistake, or imposition, as the rule that the receiving of a part of the debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance, does not apply, where plaintiff's claim is disputed or unliquidated. Under these circumstances there is a sufficient consideration for the settlement. The fact that the creditor was not legally bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to receive and would have recovered had he brought action, or that he was induced to accept a part of his claim, by fear that he would lose the whole of it, does not in any way affect the operation of the rule, and it is of no importance which of the parties was right in his contention, or that in fact they were both wrong." [1 C. J., pp. 551, 552, 553.]

See, also, Brady v. Ins. Co., 180 Mo. App. 214; Zinke v. K. C. T. M., 205 S. W. 1; Pullman v. St. Louis, 145 Mo. 651; McCormick v. St. Louis, 166 Mo. 315; St. Jos. School Board v. Hull, 72 Mo. App. 403, 409; Maack v. Schneider, 51 Mo. App. 92.]

We have examined Goodson v. Acc. Asso., 91 Mo. App. 339; Crowder v. Con. Cas. Co., 115 Mo. App. 535; Dodt v. Ins. Co., 186 Mo. App. 168; Biddlecom v. Assur. Co., 167 Mo. App. 581, and like cases cited by plaintiff, and find them not in point. In some of these cases there was fraud in the settlement. Other of the cases involve life insurance where the amount of the loss was fixed by the contract of insurance or by operation of law.

In the case at bar the amount of plaintiff's indemnity was not fixed by the policies of insurance nor by operation of law, but was a matter to be determined when the loss occurred by the facts then existing. The settlement of an unliquidated demand furnishes the consideration for the accord and satisfaction. [1 C. J., p. 553.]

There is no merit in the contention that because the adjuster told plaintiff that the amount defendant was paying was all that he was entitled to under the law, in that the three-fourths value clause was valid, entitled plaintiff to escape the effect of his act in executing the releases and accepting the money.

It is quite apparent that the doctrine of mistake has no place in this case. The mistake, if any, was had in arriving at the accord but before satisfaction plaintiff had been advised by an attorney that the three-fourths value clause in the policies was void. It is quite apparent that plaintiff did not accept the money on account of a mistake but took it either believing the clause was invalid or regardless as to whether it was or not and because of his necessities.

In addition to this, had there been a mistake it was one of law and not of fact. Even assuming that plaintiff and the adjuster made the settlement on the mistaken hypotheses that the clause in question, was valid, all of the facts were known, the mistake being in the law itself. The parties in making the settlement, that is in liquidating an unliquidated claim, misinterpreted the law. This was a pure mistake of law and one that the courts will not remedy. [City of St. L. v. Priest, 88 Mo. 612; Norton v. Highleyman, 88 Mo. 621; Price v. Estil, 87 Mo. 378; Couch v. Kansas City, 127 Mo. 436.] There is no charge of fraud or over-reaching on the part of the adjuster, even if such would be a defense. [See Ordway v. Ins. Co., 35 Mo. App. 426, 433; Allgood v. Tarkio, 6 S. W. (2d) 51, 55.]

It is doubtful if there is any question of waiver of the accord and satisfaction in this case, but even if the conduct of the defendant can be said to constitute such a waiver, then defendant was not bound thereby, because there is no element of estoppel existing, nor was the alleged agreement to reopen the matter supported by a consideration. When the alleged waiver was made the contract of settlement had been consummated. It was final and complete. Nothing short of a new contract, with all of the necessary elements, including a consideration, could be construed as reopening the accord and satisfaction. [1 C. J., p. 569; 13 C. J., p. 602; Commission Co. v. Kilbourne, 111 Mo. App. 542.]

From what we have said it is unnecessary to pass upon the validity of the three-fourths value clause contained in these policies of insurance, for the reason that it is apparent, in any event, that there has been a final settlement of the amount of plaintiff's loss and he is not entitled to recover.

The judgment is affirmed. All concur.