James O. RICCARDI et al., Appellants,

v.

**UNITED STATES FIDELITY & GUARAN-
TY COMPANY and Zurich Insurance
Company, Respondents.**

No. 24703.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 2, 1968.

Application to Transfer Denied
Jan. 13, 1969.

———◆———

Donald W. Johnson, Ernest H. Fremont Jr., Popham, Thompson, Popham, Trusty & Conway, Kansas City, for appellants; Charles V. Garnett, Kansas City, of counsel.

Knipmeyer, McCann & Millett, by Glenn McCann, Kansas City, for respondents.

MAUGHMER, Commissioner.

■ This case is on reassignment. It is a suit on two fire insurance policies, insuring the contents, betterments and improvements of a building in Kansas City, Missouri. Trial was to the court without a jury. At the close of plaintiffs' case the court sustained defendants' motion to dismiss. Plaintiffs have appealed. It is true, as plaintiffs assert, that in review of a court tried case and where plaintiffs' cause was dismissed by the court at the close of plaintiffs' evidence, we view the evidence most favorably for plaintiffs. Garrison v. J. L. Querner Truck Lines, Inc., Mo.App., 308 S.W.2d 315.

The plaintiff, James O. Riccardi, in 1958, leased the building located at 7912 Wornall Road, Kansas City, Missouri, planning to house and carry on therein the business of selling golf lessons and golf supplies. The building contained between 4,000 and 5,000 square feet of space. He remodeled the interior into numerous rooms, put on new ceiling, flooring, fresh paint, installed heating equipment, airconditioning and generally endeavored to make the structure suitable for operation of the contemplated enterprise. In December, 1958, the place was opened for business.

On December 3, 1958, the plaintiff Riccardi purchased and defendant United States Fidelity & Guaranty Company issued to him, a policy in the principal sum of $15,-000 which on January 22, 1959, was increased to $20,000. This policy insured the *contents, including improvements and betterments,* of the Wornall Street building against loss by fire (and other hazards). Soon thereafter plaintiff incorporated the business under the name "Sam Snead School of Golf, Inc." On September 18, 1959, the defendant Zurich Insurance Company issued a like policy to the corporate plaintiff in the sum of $40,000. It is conceded that both policies were in full force and effect at the time of the alleged loss. In neither policy was the coverage apportioned between contents and improvements or between personalty and realty.

On October 28, 1959, there was a fire which plaintiffs claim totally destroyed the building and contents. The plaintiff Riccardi filed written proofs of loss and therein asserted a total loss of $62,979, and claimed damages for the full amount of coverage under each policy—that is, $20,000 against U. S. F. & G. and $40,000 against Zurich. The companies rejected the proofs of loss. Mr. Riccardi consulted and advised with his attorney, Mr. Frank P. Barker, Jr., and discussions were had with company attorneys and representatives regarding the claim. On March 16, 1960, the plaintiffs, in consideration of the sum of $50,000 (⅚ths of the face amount of each

policy), executed a written release to defendants. The release is in the usual form and contains the following: 1. A recitation that it is a full settlement of all claims against defendants arising out of the fire of October 28, 1959. 2. Discharges defendants from all liabilities under the said insurance policies and provides same shall be surrendered. 3. Recites that the settlement is "made and accepted by way of compromise of a disputed claim." 4. Mr. Riccardi for himself and the corporation certified that he had read the contents and that their attorney, Frank P. Barker, Jr., "has explained, counseled and advised" us concerning the release. 5. In the release of the attorney's lien, Mr. Barker declared that he had "fully advised" plaintiffs as to the "nature and effect" of the release and that they understood the same. Apparently plaintiffs were dissatisfied or became dissatisfied with the purported settlement. In any event, nearly 21 months later, on December 7, 1962, they filed the present suit under which they seek judgment against defendants for the remaining ⅛th of each policy ($3,333.33 against U. S. F. & G. and $6,666.67 against Zurich) plus penalties.

Defendants pleaded the release as a bar to the action. Plaintiffs replied that the release was without consideration and invalid. A trial was had before the court. Plaintiffs presented in evidence the proofs of loss which were sworn to by Mr. Riccardi and photographs of parts of the building taken after the fire.

Mr. John O. Winfrey, chief inspector of the Fire Prevention Division of the Kansas City, Missouri Fire Department, was called as a witness by plaintiffs. He testified that he had been called to the scene of the fire by the battalion fire chief, and that with Mr. Fred Ennis of the Kansas City Police Department, who was in charge of the Arson Squad, he conducted an investigation in an effort to determine the cause of the fire. He said that they found a can of flammable liquid in the furnace room. (Mr. Riccardi said this liquid was cleaning fluid). During the fire there was an explosion which "blew out" some front windows. The investigators never reached a definite conclusion as to the cause of the fire which is still listed as of "unknown origin."

Mr. Robert Spector, who said he had been "in the insurance salvage business" for 25 years, described the building and contents after the fire as "just a total loss, just a messy total loss." Mr. Spector leased the premises, said he tore down the burned structure, hauled the debris away and erected a new building for his purposes.

The plaintiff, Mr. Riccardi, testified in his own behalf. On examination by his own counsel, he denied starting the fire. He said he did not know its cause. He described his renovation of the building and the purchase of the two insurance policies. He said the fire resulted in a "total loss" and there was nothing "salvageable" after the fire.

The proofs of loss which Mr. Riccardi for himself and on behalf of the corporate plaintiff submitted to defendants stated the total loss from the fire to be $62,979, and claimed $60,000 or the full amount under the two policies. However, the proofs of loss did not list one single item that was allegedly burned, or list any article that was in the building when either the policy was issued or just prior to the fire. Although plaintiff himself testified, he did not specify any personal property that was either destroyed or damaged by the fire. He did not produce an inventory of the merchandise or personal property that was "on hand" at the time of the fire, at the time the policies were written or at any other time, nor was any evidence adduced as to the cost or value of the "improvements and betterments."

Such was the state of the record and the evidence when the plaintiffs closed their case. The defendants filed their motion to dismiss on the ground that the plaintiffs had failed to prove the invalidity of the release and had failed to make a prima facie case on the policies. The motion was sustained. Did the court err in sustaining

the motion and in dismissing plaintiffs' suit? That is the question before us.

■ We shall first consider the validity of the release. Was there an accord and satisfaction? There is no claim that the release was procured by fraud or misrepresentation. There is no charge that plaintiffs were "overreached". We note that they had the benefit of counsel during the negotiations and at the time of the purported settlement. " * * * it is universally recognized that, in the absense of fraud, mistake, artifice, or imposition, the payment and acceptance, as full settlement, of a less amount than is claimed by the creditor constitutes and effects a good accord and satisfaction of the whole claim or demand, where it is not liquidated, or is the subject of a dispute between the parties, * * *." 1 C.J.S. Accord and Satisfaction § 32. The rule just stated was quoted with approval by this court in Laxton v. Retail Hardware Mutual Fire Ins. Co., 226 Mo. App. 954, 48 S.W.2d 144, 146. In the Laxton case there were two policies, $500 on fixtures and $14,500 on the stock of goods. The policies contained a "three-fourths value" clause. There was a total fire loss. Plaintiff and defendant company's adjuster agreed that the actual value of the fixtures at the time of the fire was $624, and of the stock was $13,789.32. Plaintiff claimed and was paid $500 on the fixtures and three-fourths of the balance of the value of the stock at the time of the fire, or $10,304.87. He sued for the difference between the amount paid and the face amount of the policies or $4,195.13. It was held that the claim or obligation was not "liquidated", that the release was binding and that it constituted an accord and satisfaction.

Plaintiffs rely upon the Missouri Valued Policy statutes. Sections 379.140, 379.-145 and 379.160, V.A.M.S. The first two sections expressly (Sec. 379.145(2)) "apply only to real property" and declare that " * * * in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant." Section 379.160 declares: " * * * the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property covering both real and personal property, * * *."

■ Plaintiffs say that when there was a total loss by fire of the property insured, the defendants incurred a fixed liability to pay the face amounts of the policies, that the obligations were for definitive amounts, were "liquidated", were not subject to an accord and satisfaction and therefore the release is without consideration and invalid. The Missouri Valued Policy statutes have been interpreted as meaning exactly what they say (that is, the insurer may not deny the insured value at the time the policy was issued was the amount of the policy, and the measure of damages in case of a complete loss by fire is the amount for which the property was insured less whatever depreciation in value may have occurred between the time the policy was issued and the time of the fire. Strawbridge v. Standard Fire Ins. Co., 193 Mo.App. 687, 187 S.W. 79; Laxton v. Retail Hardware Mut. Fire Ins. Co., 226 Mo.App. 954, 48 S.W.2d 144. Where the coverage and loss is to real estate the burden of proving the depreciation rests upon the defendant or the insurer. (Secs. 379.140, 379.145, supra). Where the coverage and loss is to personal property the burden of proving value at the time of loss or amount of depreciation between date of insurance and date of loss rests upon the plaintiff or the insured. State ex rel. North British & Merc. Ins. Co., v. Cox et al., in banc, 307 Mo. 194, 270 S.W. 113; State ex rel. Burton v. Allen et al., 312 Mo. 111, 278 S.W. 772. In Smith v. Caledonian

Ins. Co. of Scotland, 195 Mo.App. 379, 191 S.W. 1034, 1037, the court said: "* * * the burden of proof is on the insured to show there was no depreciation of such personal property between the time of the issuance of the policy and the fire." This court (Bergerson v. General Ins. Co. of America of Seattle, Washington, 232 Mo.App. 549, 105 S.W.2d 1015, 1019) stated the rule this way:

"While, the burden was upon the plaintiff to show the value of the property immediately before the fire, and it was proper for defendant to introduce evidence bearing on the same subject, the measure of damages was the difference between the amount that the property was insured for, less the depreciation, if any, that took place between the time of the writing of the policy and the fire, there being a total loss. To permit defendant to introduce testimony on any other theory would be an evasion of the valued policy statute."

In Avery v. Mechanics' Ins. Co. of Philadelphia, 222 Mo.App. 467, 280 S.W. 726, 730, the court said:

"The orderly process in proving the cash value of property, as contemplated by the statute, is to take the value of the property at the time of the issuance of the policy * * *, and deduct from it the depreciation and other proper deductions through loss or otherwise."

Plaintiffs agree that as to personal property the burden of proof rests on plaintiffs to prove value at time of loss or depreciation in value from the date of insurance to date of loss.

■ The word "depreciation" and the phrase "depreciation in value" are used and applied in the broader sense of meaning and include any reduction or lessening in value. It would appear that an insured would be much more fully informed and have greater access to proof concerning any depreciation in value of personal property than would the insurer. We have here a $20,000 policy which had been in force just less than one year and a $40,000 policy which had been in force just over one month. Both covered "contents and improvements and betterments" but in neither was an amount allocated to each coverage. The contents consisted of equipment for use in giving golf lessons and golfing merchandise for sale. A part of the coverage was on this personal property. The burden was on plaintiffs to prove the amount of the depreciation thereon. It might include many kinds of loss or depreciation or cause for dimunition in value, one of which might be sale of some merchandise without replacement.

In the case before us it was agreed the policies were in full force and effect at the time of loss. The Valued Policy statutes fix the value of the "contents, improvements and betterments" at $60,000 when the coverage was granted. Plaintiffs could prove the value at the time of loss by an inventory or a listing of the items lost and their value, or in lieu of proving actual value at time of loss, plaintiffs could prove the depreciation or diminution in value, if any, since the policies were issued. An inventory at the date of issuance and another just before the fire would probably sustain the burden. Testimony that any merchandise sold, broken, lost or stolen, had been replaced with equivalent items might suffice.

■ In the instant case, plaintiffs made no effort to prove (1) value at time of loss or (2) amount of the "depreciation in value", except in their proofs of loss, which we shall discuss later. Plaintiffs at the trial seeemed to be concerned only with showing or proving (1) the defendants were not justified in concluding or urging that the fire was caused by arson, committed or instigated by the plaintiff Riccardi; (2) the property was utterly destroyed and was a complete loss. Plaintiffs offered no evidence as to the value of the contents at the time of the loss or at the time of loss compared to the value at the

time the policies were issued. The amount of damages due under the policies was therefore not established and was an "unliquidated" claim subject to accord and satisfaction or compromise and settlement.

Assuming that plaintiffs' testimony eliminated the possible "dispute issue" of arson and total loss, still defendants had a bona fide and reasonable dispute as to the amount of the loss and a "liquidated" claim had not been established. Either of these— an unliquidated demand or a reasonable dispute as to the amount of loss would supply a proper and sufficient consideration for the release which the parties entered into.

Plaintiffs invite our attention to the opinion of this court in Michigan Fire & Marine Ins. Co. v. Magee et al., 240 Mo. App. 767, 218 S.W.2d 151, 155. There the suit was on a policy insuring a dwelling. The court declared the rule that under the Valued Policy statute the damages were arbitrarily fixed at the amount for which the property was insured, less depreciation where there was a total loss. As to depreciation the court said: "Plaintiff (Ins. Co. in declaratory judgment action) makes no issue as to depreciation in this case and can claim none." This is quite proper where the burden of proving depreciation rests with the insurer who must not only prove but necessarily raise the issue. This is so where the policy has to do only with real estate. We believe the converse would be true in a suit on personal property where the burden rests upon the insured. It was held in Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349, syllabus 9, that "Beneficiary, having admittedly executed release * * *, had the burden of pleading and proving any matter in avoidance of release, such as want of consideration therefor." In Foster v. Aetna Life Ins. Co. of Hartford, Conn., 352 Mo. 166, 176 S.W.2d 482, the holding was to the same effect.

■ Plaintiffs contend on appeal that the written proofs of loss which were received in evidence without objection and in which the loss was claimed to be $62,979 make a prima facie case as to the value of the personal property at the time of the loss. We quote from the Supreme Court opinion in Mercer v. Millers' Mut. Fire Ins. Ass'n, 249 S.W.2d 402, 404:

"By way of generalization it may be said that proofs of loss are admissible to show compliance with the provisions of the policy in that respect, but they are not admissible for other purposes; for example, they are not 'competent independent evidence' as to the amount of the loss or the value of the property. 46 C.J.S., Insurance, § 1340b, page 493; Tiller v. Farmers' Mutual Fire Ins. Co., 220 Mo.App. 1337, 296 S.W. 464, 466."

The proofs of loss do not constitute proof as to value at the time of loss.

The fact that the defendants did not object to their reception into evidence is immaterial. The proofs were admissible to show compliance with that particular policy requirement and not to prove value. In addition, these particular proofs of loss contain little of factual proof—only the simple conclusion as to the total amount of loss without any listing of the property which made up this alleged total value.

■ A part of the coverage here was on real property—improvements and betterments—as to which the burden was on defendants to prove depreciation in value, if any. However, a portion of the coverage was also on personal property—a stock of goods held for sale—and a dispute on this part of the coverage (where the amount of insurance is not allocated between personalty and realty) is sufficient to make the total claim an unliquidated one, and will furnish consideration for the settlement, compromise and release of the total claim.

It is our conclusion that the claim at issue here was an "unliquidated" claim and that a bona fide dispute existed as to the amount of the loss. Either will support an accord and satisfaction or compromise and

release. The plaintiffs have not carried the burden of showing lack of consideration for the release.

Therefore, the court did not err in sustaining defendants' motion to dismiss and in entering judgment for defendants. The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., and CROSS, J., concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.