ALASKA FEDERAL SAVINGS & LOAN AS-
SOCIATION, a corporation, Plain-
tiff-Respondent,

v.

Robert E. HOFFMAN and Susan Hoffman,
Defendants-Appellants.

No. 25848.

Missouri Court of Appeals,
Kansas City District.

Sept. 7, 1972.

H. Michael Coburn, Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, for defendants-appellants.

Ronald S. Weiss, Charles N. Bono, Berman, DeLeve, Kuchan & Chapman, Kansas City, for plaintiff-respondent.

SWOFFORD, Judge.

The parties will be referred to herein as they were below.

The plaintiff, a corporation operating under the laws of the State of Alaska, brought suit against the defendants Robert E. Hoffman and Susan Hoffman, his wife, on a promissory note dated May 21, 1964, in the face amount of $3,117.41, on which it was claimed the defendants owed a principal balance of $2,909.57 plus interest, attorneys' fees and costs. The petition was in orthodox form and a copy of the note was attached thereto.

In answer to the petition, the defendants admitted the execution of the note, but as an affirmative defense alleged accord and satisfaction, and that their obligation thereunder had been fully satisfied and discharged by a written agreement dated June 1, 1965.

The plaintiff filed no reply to this answer, and the case proceeded to trial and resulted in a unanimous verdict for the defendants, upon which judgment was entered in their favor.

Thereafter, the trial court sustained plaintiff's after-trial motions to have the verdict and judgment set aside and a judgment entered in its favor in accordance with its motion for a directed verdict filed at the close of all the evidence, and in the alternative for a new trial.

The trial court thereupon entered a judgment against the defendants in the amount of $3,256.81 and, in the alternative, granted the plaintiff a new trial for the reason that the court erred in giving Instruction No. 5.

Defendants have perfected their appeal as required by law and our jurisdiction is not in question.

In this posture of the case, the first matter for our decision is the propriety of the trial court's after-trial order setting aside the verdict of the jury and judgment and entering a judgment for the plaintiff. Or, stated differently, were there areas of factual dispute on the issue of the affirmative defense of accord and satisfaction to warrant the submission of this case to the jury?

In our review of the record to find the answer to this problem, we are guided and restricted by certain fundamental decisional precepts.

■ Our courts have recognized the power and authority of a trial court to direct a verdict for the plaintiff either at the close of the evidence or in response to after-trial motions in situations where there is no real factual dispute and when the facts establish as a matter of law a right to that verdict in the plaintiff. This violent result occurs "very seldom" (Helfrick v. Taylor, Mo.Sup., 440 S.W.2d 940, 943(1) ) in the lexicon of our decisional law, and then only in "unusual" or "exceptional" cases. The courts have not been prone to thus limit the basic functions of the jury as the fact-finding unit in litigation. Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282, 287(1); Zagarri v. Nichols, Mo.Sup., 429 S.W.2d 758, 760(2); Auffenberg v. Hafley, Mo.App., 457 S.W.2d 929, 934, 935(2–8).

In accordance with this basic premise and to satisfy its requirements, we are called upon to view the evidence in the record before us in a light most favorable to defendants. In ruling whether defendants made a submissible defense, they are entitled to the benefit of all evidence favorable to them from that adduced on both sides; all evidence unfavorable to them must be disregarded; and they are to have the benefit of all reasonable inferences to be drawn from the evidence. Koogler v. Mound City Cab Co., Mo.Sup., 349 S.W.2d 233, 237(5); Schmidt v. Windish, Mo.Sup., 304 S.W.2d 891, 894(3). This, of course, is the same rule applicable to appellate review of a matter wherein the defendant claims the right to a directed verdict, and the statement of the court in the much cited case of DeLay v. Ward, en Banc, 364 Mo. 431, 262 S.W.2d 628(4) applies. There, the court said, 1. c. 633:

"* * * The cause may not be withdrawn from the jury unless the facts in evidence and the legitimate reasonable inferences which may be drawn therefrom are so strongly against plaintiff *(defendant) as to leave no room for reasonable minds to differ. * * *"* (Parenthesis and emphasis supplied.)

We turn now to the evidence considered from this point of view.

Defendant, Robert E. Hoffman, was an employee of the Bureau of Indian Affairs at Juneau, Alaska, in his thirties and single. In 1960 or 1961, he purchased a home on the outskirts of Juneau at a cost of $24,000.00–$25,000.00. The purchase of this home was financed by the plaintiff, Alaska Federal Savings and Loan Association, of which Mr. Lee C. Coffman was an officer. This loan was FHA insured and secured by a deed of trust on said property.

In 1962, Mr. Hoffman married defendant Susan Hoffman. The balance on the original loan was then in the neighborhood of $22,000.00. Mr. and Mrs. Hoffman planned extensive remodeling of the property and obtained estimates and bids for this work amounting to approximately $18,000.00. Mr. Coffman was contacted, viewed the property, went over the estimates and bids, and assured Mr. Hoffman that the additional loan would be approved, and Hoffman commenced the remodeling work.

It later developed, however, that the plaintiff approved only a $12,000.00 loan for remodeling, and again dealing through Mr. Coffman, a new loan was arranged combining the old balance of $22,000.00 and

the additional sum of $12,000.00, and a note secured by a deed of trust for $34,000.00 was executed by Mr. and Mrs. Hoffman on November 8, 1963. This was a conventional loan, at a substantially higher rate of interest, and was not insured by FHA, and was payable at the rate of $273.70 per month, principal and interest.

The Hoffman property was serviced by septic tanks, as were all of the homes in that area. Defendants had no trouble with this sewerage system, but some of the homes in the development did, because of their lower lying situation. There was a sewer line near and talk of making sewer connections. The Hoffman connection was to cost $2500.00, including land fill and landscaping.

Hoffman again talked to Coffman and Coffman told him that the sewer hook-up would enhance the value of his property and that Alaska Federal Savings and Loan was going to finance the whole group in the development, known as "Cascade Manor Association". Coffman told Hoffman that the property was in danger of sanitary sewer condemnation proceedings.

As a result, the Hoffmans executed a promissory note on May 21, 1964 in the face amount of $3,117.41, which represented the cost of the sewer connection of $2,500.-00 plus $617.41 profit for the plaintiff. This note provided for monthly payments of $51.96 and is the note sued on in this action. This note was insured by FHA.

During the course of his dealings with the plaintiff over a period of four (4) years, the defendant, Robert Hoffman, had developed absolute confidence in Mr. Coffman, relied heavily on his judgment, and discussed his financial matters in detail with him. Coffman had visited the defendants' property on several occasions.

In the last part of 1964, the defendant, Robert Hoffman, was advised by the government that he was to be transferred from Alaska sometime before the end of the fiscal year, June 30, 1965, although the exact date was not certain. It therefore became necessary for him to dispose of his home. He placed it in the hands of a relator, J. C. Dodd, but only for a period of a few days.

In a conference with Coffman, Coffman again viewed the property and told Hoffman he placed a value on it of $52,000.00, and that he, Coffman, could find a buyer. Coffman suggested that a Mr. Kasnick might be interested in purchasing the house. Through Coffman, a number of three-way conferences were had, with the net result of Kasnick agreeing to buy the Hoffman property. The terms of the sale were that Kasnick would undertake and pay all of Hoffman's indebtedness to Alaska Federal Savings and Loan; would pay Hoffman an additional $2,000.00 in cash; and Hoffman would be permitted to occupy the property until not later than July 1, 1965 without making any further payments of any kind to plaintiff.

This agreement was reached the latter part of December, 1964, but was not reduced to writing. Mr. Coffman was to prepare all necessary closing papers when Hoffman's date of departure from Alaska was known. At this time, Hoffman was current in his payments on both notes. In accordance with the agreement, he made no further payments on the notes after December, 1964. He received no delinquent notice from plaintiff nor did it make any of its customary attempts at collection through its lawyers. Defendant Robert Hoffman made no further attempt to sell his home through other channels, since he considered it sold to Kasnick.

Mr. Ed Kasnick was a real estate speculator and his son, Guy E. Kasnick, was an officer of plaintiff and Coffman's "right hand man".

In late May of 1965, defendant Hoffman received word that he was to report to Washington, D. C. by June 5, 1965. On about May 28, 1965, he went to Coffman's office to close the sale and was advised by Coffman that Ed Kasnick now refused to go through with the agreement, and

Coffman demanded that defendant make all payments then due from December, 1964. Foreclosure was discussed, but finally Coffman agreed to see "what Kasnick was willing to do".

This resulted in a conference with Coffman, where Coffman told him Kasnick would agree to assume and pay the first mortgage, but would pay Hoffman nothing for his equity, so that Hoffman "could get out from under it". Hoffman was further required to bring the interest on the note to a current basis, and if he did so, this would terminate all of his indebtedness to plaintiff. In order to accomplish bringing the note current, Hoffman agreed to apply his last paycheck from the government for his work in Alaska, which also included some accumulated retirement benefits, and pay some cash in addition. This was to satisfy all of his obligations to plaintiff.

On June 1, 1965, Hoffman went to Coffman's office, gave him a power of attorney to negotiate his final paycheck, gave him $250.00 in cash, and they both signed an Agreement which defendant Hoffman had prepared. Coffman testified that he read this Agreement and signed it on behalf of the plaintiff. He was then President of the plaintiff. Hoffman acted for himself and his wife.

This Agreement (Defendants' Exhibit No. 1) reads as follows:

### "AGREEMENT

This agreement defines the purpose and conditions of the Power of Attorney dated the First Day of June, 1965, signed by Robert E. Hoffman, and notarized by Ruby S. Hogins. Alaska Federal Savings and Loan Association is authorized to cash the check described in said Power of Attorney and to deduct from it the amount of $1,105.33. The difference in the amount of the check and $1,105.33 will be paid to Robert E. Hoffman, Box 1761, Juneau, Alaska. If the check is less than $1,105.33, Robert E. Hoffman

will immediately pay the difference to Alaska Federal Savings and Loan Association. Acceptance by Alaska Federal Savings and Loan Association of the above amount constitutes an agreement and understanding between Alaska Federal Savings and Loan Association and Robert E. Hoffman that no further amounts are due and owing from Robert E. Hoffman to Alaska Federal Savings and Loan Association.

SIGNED:      L. C. Coffman
                For Alaska Federal Savings and Loan Assoc.

SIGNED:      Robert E. Hoffman
                Robert E. Hoffman"

Hoffman accepted this arrangement because he was pressed for time and felt there "was no other way out". Title to the property was thereupon transferred to Kasnick.

Hoffman heard nothing further from the plaintiff until a letter of August 4, 1965, demanding $2,909.54 on the May 21, 1964 note (the sewer loan) and advising him that this loan was in the process of being turned over to FHA. FHA paid the plaintiff $2200.00 on this note in October 1965, and thereafter attempted to collect from Hoffman. Hoffman supplied an official of FHA with a copy of the Agreement of June 1, 1965. Thereupon, FHA had demanded and received back from plaintiff its $2200.00 and had returned the note to plaintiff. This suit was filed on February 13, 1967, with the results above noted.

Both in the trial below and presentation here, counsel are in apparent agreement that the law with relation to accord and satisfaction is the same in Missouri as in Alaska, and our research confirms this conclusion. In fact, there are very few Alaska decisions on the subject, and only two cited in respondent's brief (from a total of 40 cases cited) and none in appellants' brief, in which 18 cases are cited. We have carefully read the two Alaska cases, Alaska Creamery Products, Inc. v.

Wells, 373 P.2d 505, and McGillvray v. Gross, D.C., 167 F.Supp. 373, and find that neither is pertinent or persuasive here. This matter will therefore be ruled upon the principles as established by Missouri decisional law on the defense of accord and satisfaction, as applicable to the facts of this case. There are few of these decisions which are helpful beyond the pronouncement of basic principles, since the factual situations within this area are so varied and distinguishable. Some of the principles must be kept in mind, however.

In Seibel v. Harry S. Surkamp Inv. Co., Mo.App., 328 S.W.2d 179, this court said, l. c. 184:

> "Strictly speaking, a true accord and satisfaction consists of the two elements expressed in that phrase. Accord is the agreement whereby one party agrees to give or perform, and the other to accept, in satisfaction of a claim arising from contract or tort, something other than or different from what he is or thinks himself entitled to. Satisfaction is the performance of such agreement. 1 C.J.S. Accord and Satisfaction § 1, p. 462. * * *"

See also: Guild Associates, Inc. v. Peaceful Valley Lake Corp., Mo.Sup., 447 S.W. 2d 292, 295; Barber v. Mallon, Mo.App., 168 S.W.2d 177, 179; Western Military Academy v. Viviano, 235 Mo.App. 301, 133 S.W.2d 1098, 1102; Bohle v. Sternfels, Mo.Sup., 261 S.W.2d 936, 941, 942.

■ Accord and satisfaction must meet the basic requirements of a simple contract. The contract hinges primarily on the matter of intention, and if the facts regarding intention are in dispute, such disputed facts are for the determination of the jury. 1 C.J.S. Accord and Satisfaction § 3a, pp. 468, 470; 1 Am.Jur.2d Accord and Satis-

faction, Sec. 11, pp. 309, 310; Eberting v. Skinner, Mo.App., 364 S.W.2d 829, 834.

■ Where the basic claim is unliquidated or in dispute, no additional consideration other than partial payment is necessary to support a contract of accord and satisfaction. 1 C.J.S. Accord and Satisfaction § 29a(5), p. 505, § 32a, p. 512, § 32c(3), p. 520. Riccardi v. United States Fidelity & Guaranty Co., Mo.App., 434 S. W.2d 737, 740; Harlin & Griffin v. Mo. State Highway Comm., Mo.App., 51 S.W. 2d 553, 555.

■ Where the basic claim is liquidated and undisputed, some additional consideration is necessary to support the contract of accord and satisfaction. Since the law favors compromise, such additional consideration can be slight and the courts are generally not concerned with the nature or amount of such nor with the merits of the basic claim. Eberting v. Skinner, supra; Weinberg v. Globe Indemnity Co., Mo. App., 355 S.W.2d 341; Laxton v. Retail Hardware Mutual Fire Ins. Co., 226 Mo. App. 954, 48 S.W.2d 144; Collins v. Gaskill, 359 Mo. 171, 221 S.W.2d 181, 185, 187.[1]

The rule as stated by the Supreme Court in Charles F. Curry & Co. v. Hedrick, Mo., 378 S.W.2d 522, as applied to the sufficiency of consideration in simple contract cases, applies with equal force to contracts of accord and satisfaction. The court there said, l. c. 533:

> " * * * There are various definitions of 'consideration' as applied to simple contracts. A valuable consideration 'may consist of some right, interest, profit or benefit accruing to one party, or some forebearance, loss or responsibility given, suffered or undertaken by the other.' (cases cited.)"

---

1. We have given no consideration here to the possible effect of the Uniform Commercial Code, Sec. 400.1–107 V.A.M.S. and Sec. 45.05.014, Alaska Statutes, up-
on this general rule, since it is not necessary to our decision that we do so, and appellant does not urge this in its points and authorities.

■ The issue of accord and satisfaction must be determined according to the existing facts at the time of the settlement. Cone v. Equitable Life Insurance Company of Iowa, Mo.App., 310 S.W.2d 29, 32; 1 C.J.S. Accord and Satisfaction § 32c, p. 519.

In the light of these principles and from the record before us in this case, we have concluded that the court below erred in setting aside the jury verdict and the judgment thereon and entering a judgment in favor of the plaintiff.

■ A dispute existed between the parties on June 1, 1965. Additional consideration was not necessary to support the contract of accord and satisfaction before us. From January, 1965, the defendants considered all of their obligations to plaintiff discharged by reason of the agreements reached between the defendants, Coffman, the chief executive officer of the plaintiff, and Kasnick. As part of the consideration of the Hoffman-Kasnick sale, Coffman had advised the Hoffmans that no further payments on the notes would be expected from them. The only condition imposed was that they vacate the property on or before July 1, 1965. The monthly payments thus forgiven were $263.70 on the real estate loan and $51.96 on the sewer loan, or a total sum over the five month period of $1,581.30.

On May 28, 1965, when Coffman advised the defendants that Kasnick was not going through with the agreement, he demanded that Hoffman pay all of the payments from January 1, 1965 and discussed foreclosure. His position was that Hoffman was obligated on both notes to the full amount. Hoffman's position was that he owed nothing on the notes; that his obligation to the plaintiff was discharged, and that he had $2,000.00 coming to him in cash for his equity in the property in addition to the forgiven payments from January 1, 1965. It would be difficult to conceive a more direct and violent "dispute" under these facts.

■ Plaintiff's position seems to be that since the *terms* of the original notes were not in dispute, and the defendant so stated, that the accord and satisfaction fails because of lack of consideration. We reject this position and adopt and apply the rule stated by this court in Laxton v. Retail Hardware Mutual Fire Ins. Co., 226 Mo. App. 954, 48 S.W.2d 144, where the court said, l. c. 146:

"* * * Of course, a claim may be liquidated in amount and there may still be an accord and satisfaction by the receipt of a smaller amount by the creditor, *if the claim, itself, as distinguished from the amount, is disputed* and the settlement made in view of the dispute * * *." (Emphasis added.)

■ However, it is apparent that there were numerous considerations as between plaintiff and defendants to support this contract of accord and satisfaction.

As of the date of the June 1, 1965 agreement, by reason thereof, all of the back interest on the property loan was paid up by defendants and Kasnick had assumed and agreed to pay all of the unpaid balance of said loan in the amount of $33,458.56 on a property which Coffman valued at $52,-000.00. Thus, the plaintiff had a current well secured loan with a known solvent and present obligor, the father of one of its officers; foreclosure proceedings were avoided with the incident risks of depreciation of the vacant property pending such proceedings, and a deficiency judgment against an absentee obligor, and the necessity of resale after foreclosure. Mr. Coffman testified as to the general policy of the plaintiff in these matters. He said, T. 73:

"we would sooner have current loans rather than foreclosed property. We did not want the house or anything to do with it."

Also, from the record before us, the defendants would have been justified in filing an action against Kasnick and Coff-

man, and possibly the plaintiff, upon the original agreement and the settlement of June 1, 1965 avoided the possibility of such litigation.

Since we are of the opinion that the trial court erred in setting aside the jury verdict and entering judgment for the plaintiff, it is not necessary to pass upon the contention of defendants that plaintiff's evidence violated the parol evidence rule.

Even if error was committed in this area, it was harmless to the defendants in the light of the jury's verdict.

No doubt exists in our minds that the contract of June 1, 1965 was clear and unambiguous and was intended to and did discharge all obligations of defendants to the plaintiff. It states:

"Acceptance * * of the above amount constitutes an agreement and understanding between Alaska Federal Savings and Loan Association and Robert E. Hoffman *that no further amounts are due and owing* from Robert E. Hoffman to Alaska Federal Savings and Loan Association". (Emphasis added.)

Coffman testified that he read the agreement and freely signed it on behalf of his company. No serious contention was made that he lacked authority to do so. At the trial of this cause, the terms of the agreement were clear and unambiguous to Coffman, although he stubbornly maintained that the note sued on was not included in the agreement—that the agreement didn't mean what it said. On cross-examination, he testified:

"Q So, it's just an inference that you're relying on to tell the jury that really you didn't mean it when you signed this agreement that said that no further amounts are due and owing from Robert E. Hoffman to Alaska Federal Savings and Loan? *That doesn't mean what it says?*

A *It does not, no.*"

There is no merit to plaintiff's further contention that since its counsel had the original signed agreement, there had been "no delivery" of it to the defendants. The significance of this contention escapes us, since the execution of the agreement was undisputed; the defendants immediately satisfied its terms by delivering to Coffman $250.00 in cash and the power of attorney to negotiate the paycheck; the plaintiff accepted these considerations, and the agreement was thereby fully executed, and the Xerox copies (containing the signatures) of both the agreement and the power of attorney were offered into evidence as Defendants' Exhibit No. 1, whereupon counsel for plaintiff stated, T. 34:

"I have no objection to Defendants' Exhibit No. 1".

The trial court in its order of June 29, 1971, in the alternative, sustained plaintiff's motion for a new trial upon the ground that it was error to give Instruction No. 5. This instruction reads as follows:

"Your verdict must be for defendants if you believe:

First, plaintiff signed and delivered the agreement of June 1, 1965 to defendant;

Second, plaintiff received valuable consideration from defendants pursuant to said agreement; and

Third, said agreement covered the promissory note in question."

Plaintiff bases its objection to this instruction upon the fact that since counsel for plaintiff had the original, and counsel for defendants only a Xerox copy, there was "no delivery". We have discussed this contention above and hold that there was a constructive, if not actual, delivery of the agreement and power of attorney, since the defendants had an exact executed copy thereof which was admitted without objection at the trial as Defendants' Exhibit No. 1.

Plaintiff further objects to this instruction because it uses the term "valuable consideration" without definition. Here again, there was absolutely no dispute in the evidence as to what was paid by the defendants to plaintiff and accepted by it under the agreement.

The real controversy was whether or not the agreement was intended to cover a discharge of the promissory note sued upon and that fact is clearly hypothesized in the third paragraph of Instruction No. 5. There is no MAI instruction to cover the defense of accord and satisfaction, and we believe that this defense was clearly and properly presented in Instruction No. 5. The jury could not have been misled or confused thereby.

For the reasons herein stated, the judgment of the court below is reversed and the cause remanded with directions that the jury verdict and judgment in favor of the defendants and against the plaintiff be reinstated.

It is so ordered.

All concur.