**Norman SCHROEDER and Schroeder Enterprises, Inc., Plaintiffs-Appellants,**

v.

**DY–TRONIX, INC., Defendant-Respondent.**

**No. 51286.**

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 3, 1987.

Joseph R. Burcke, P.C., Clayton, for plaintiffs-appellants.

Alan J. Steinberg, Clayton, for defendant-respondent.

CRANDALL, Judge.

Plaintiffs, Norman Schroeder and Norman Schroeder Enterprises, Inc., brought an action against defendant, Dy-Tronix, Inc., for commissions due pursuant to a contract between the parties. Plaintiffs' appeal from a judgment in favor of defendant in this court-tried case. We affirm.

Norman Schroeder entered into a written contract with the defendant on November 15, 1976. Defendant acts as a sales representative for various manufacturers. Its income is derived from commissions paid by the manufacturers for sales generated by it. A share of the commissions is then

passed on to defendant's salesmen who are known as manufacturer's representatives. Pursuant to the contract, Schroeder, as an independent contractor, began working for one of defendant's offices as a manufacturer's representative. He had a duty to use his best efforts to sell exclusively for defendant in his assigned geographical area. In return, he would receive a commission on each sale within the area. The contract specified that it would continue in full force until terminated by either party and that it could be modified only by a writing, signed by both parties.

Schroeder received commissions from defendant until April 28, 1981, at which time he formed Schroeder Enterprises, Inc. Thereafter, the corporation received commissions from defendant.

Schroeder was paid in accord with the commission rates in the contract until May 1978. Defendant subsequently made several changes in its method of calculating the commissions. The first change, which took effect June 1, 1978, was consented to by Schroeder. Defendant also initiated changes in 1980, 1981, and 1982. Although Schroeder testified that he objected to these changes, which were not in writing, he continued his business relationship with the defendant for two and half years. Even if Schroeder orally objected to changes in the commission rates, he did not request that the changes be reduced to written form or otherwise assert his rights under the contract. During the two and half year period defendant did not exercise its right to terminate plaintiffs for plaintiffs' refusal to accept the rate changes.

Schroeder met with Lloyd Dustmann, defendant's president, on May 6, 1982. Subsequently, plaintiffs' business relationship with defendant was terminated. The parties agreed that Schroeder would receive a payment of $15,000 to be made in two installments. He later received and cashed both checks. His termination and the conditions of payment were confirmed in a letter to him from Dustmann.

Plaintiffs allege, inter alia, that the trial court erred in determining that the $15,000 paid to Schroeder was in complete settlement of any claims he or his corporation had against defendant.

The reasons for the $15,000 payment were disputed at trial. Schroeder testified that Dustmann indicated the payment was for an estimated commission for the thirty days following the termination of the contract. Although Schroeder's contract did not have a thirty day clause, Dustmann's termination letter to Schroeder did say that the $15,000 payment was "in place of" the thirty day clause.

Dustmann testified at length regarding the circumstances of his last meeting with Schroeder. According to Dustmann, Schroeder told him that "[H]e, [Schroeder], would like to negotiate a settlement whereby his departure wouldn't cause problems to Dy-Tronix." Dustmann "asked what he meant by departing the company without any trouble and he felt that for a sum of money he would basically depart and not for us to hear from him again." [sic] Dustmann testified that after Schroeder proposed a payment of $25,000, the parties finally agreed on a sum of $15,000. Dustmann also stated that Schroeder requested that he prepare a letter indicating that their business relationship had been a positive one in order to demonstrate to Schroeder's wife that he had been a "good salesman." Regarding the reference to a thirty day clause in his termination letter to Schroeder, Dustmann said he included it because he "didn't want to start (the letter) saying 'Due to your threat!'" Asked why the two checks included the notation "Commissions" rather than "Paid in full settlement," Dustmann replied, "I screwed up." Dustmann further testified that since the inception of defendant's business relationship with plaintiffs, Schroeder had never told him that he was owed money for unpaid commissions.

■ The distinction between compromise and settlement and accord and satisfaction is slight and the terms are often used interchangeably. *McGinnis v. Rolf*, 239 Mo. App. 54, 189 S.W.2d 456, 461–62 (1945). A true accord and satisfaction consists of the

two elements expressed in such phrases. "Accord" is an agreement whereby one party agrees to give or perform, and the other to accept, in satisfaction of a claim arising from a contract or tort, something other than or different from what he is or thinks he is entitled to. "Satisfaction" is the performance of such agreement. *Curd v. Cantrell,* 597 S.W.2d 226, 229 (Mo.App. 1980).

An accord and satisfaction must meet the basic requirements of a simple contract and the contract hinges primarily on the matter of intention. If the facts regarding intention are in dispute, the disputed facts are for the determination of the trier of fact. *Alaska Federal Savings & Loan Association v. Hoffman,* 485 S.W.2d 118, 123 (Mo.App.1972). The scope of a settlement is to be determined by the intent of the parties, ascertained from the language used and from the circumstances surrounding the settlement. *Ste Genevieve County v. Fox,* 688 S.W.2d 392, 394 (Mo.App.1985), citing *Stoddard v. Wilson Freight, Inc.,* 651 S.W.2d 152, 156 (Mo.App. 1983). The law will imply the intention from the acts of the parties. *Eberting v. Skinner,* 364 S.W.2d 829, 834 (Mo.App. 1963).

Here, Schroeder, by his own testimony believed that the payment of the $15,000 "closed out" the contract. The accord contract was supported by consideration consisting of either forebearance of termination of plaintiffs during the two and half year period or the tender of a sum of money following an exchange of mutual promises, or both. The satisfaction was the receipt of the agreed sum.

The basic question underlying plaintiffs' claim of error is whether there was substantial evidence adduced from which the trier of fact could reasonably conclude that there was a final settlement of the dispute between the parties. The payment of the $15,000 and defendant's evidence concerning the circumstances surrounding that payment support such a conclusion. Certainly, there was evidence adduced which would contradict that of defendant and which, if believed, would support an opposite conclusion. Faced with this conflict, it was the preogative of the trial court to believe defendant and accept his testimony as true. *Rinderknecht v. Caulfield* 716 S.W.2d 405 (Mo.App.1986). We defer to the wide discretion given the trial court even if there is evidence which would support a different conclusion. *Ware v. Ware,* 647 S.W.2d 582, 584 (Mo.App.1983). Plaintiffs' allegation of error is denied.

In view of our holding it is unnecessary to address plaintiffs' other points on appeal with the exception of point three in which they allege error in the trial court's refusal to admit evidence regarding the health problems of Schroeder's family. A review of the record shows that the trial court did not refuse to admit evidence. Rather, the objection to such testimony was overruled. Plaintiffs' point three is therefore denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.