Alonzo FIELDS and Neptorie Fields, Appellants,

v.

MITCH CRAWFORD'S HOLIDAY MOTORS COMPANY, Respondent.

No. WD 50503.

Missouri Court of Appeals, Western District.

Oct. 31, 1995.

---

James D. Walker, Kansas City, for appellants.

Daniel Herrington, Kansas City, for respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

SPINDEN, Presiding Judge.

Alonzo and Neptorie Fields sued Mitch Crawford's Holiday Motors Company of Independence for odometer fraud in 1993. Although the odometer of the used car Crawford's sold to the Fieldses registered more than 20,000 fewer miles than the car actually had, Crawford's contended in a motion for summary judgment that it had informed the Fieldses of the discrepancy and, therefore, should not be held liable for fraud. The circuit court agreed and granted summary judgment for Crawford's. We reverse and remand for further proceedings on the Fieldses' claim.

On May 26, 1990, Alonzo Fields looked at a 1986 Chrysler at Crawford's used car lot. The odometer indicated that the car had been driven 47,867 miles. He and his wife bought the car. One of Crawford's salesmen, Jack Stock, filled out a retail buyer's order and listed the odometer's reading as 47,867. After signing the order, someone at Crawford's gave the Fieldses an odometer disclosure statement which reported the car's mileage as 47,867, but the report also said, "Mileage reading not actual (WARNING, ODOM-ETER DISCREPANCY)." The report did not say what the discrepancy was, and apparently the Fieldses did not ask. Someone at Crawford's completed a service contract application which listed the car's odometer mileage as 47,867. Crawford's also prepared a retail buyer's order. On the back of the order was "boilerplate" language. Crawford's had Alonzo Fields sign one section which addressed the car's odometer reading:

The selling dealer received this vehicle, with approximately the mileage shown on the odometer (less miles driven for testing and demonstration). However, selling dealer makes no warranty or representation as to the accuracy of said odometer reading, either express or implied, except that said odometer reading has not been altered by selling dealer, and that dealer has no knowledge that it was altered or disconnected prior to the time this vehicle came into dealer's possession. . . .

Purchaser understands that dealer has no control over what may have been done to the odometer by previous owners, and that dealer has no way to ascertain the correctness of the odometer reading. Dealer has offered to give to buyer the name of the individual or entity from whom dealer purchased the vehicle and to provide purchaser with information as to how he may contact the previous owners, and to ascertain from the Department of Revenue the mileage shown on the odometer on any previous transactions concerning this vehicle.

An application for Missouri title and license completed by someone at Crawford's also listed the mileage as 47,867. Based on title and sale documents furnished by Crawford's, someone at the Department of Revenue prepared a title which stated that the car's "actual mileage" was 47,867.

In September 1992, Neptorie Fields took the Chrysler to Crawford's for servicing. Someone in Crawford's service department told her that the car had about 22,000 more miles than its odometer indicated. The Fieldses learned for the first time, they con-

tend, that the car's original odometer had been replaced by the previous owner at about 22,000 miles and the car's actual mileage when they bought it was 70,843.

On November 16, 1993, the Fieldses filed a two-count petition accusing Crawford's of common law fraud and violations of § 407.511, *et seq.*,[1] Missouri's odometer statutes. Crawford's moved for summary judgment. On December 20, 1994, the circuit court granted summary judgment to Crawford's, finding no genuine issues of material fact. The circuit court also ruled that the statute of limitations barred the statutory odometer fraud claim.

■ In their first point on appeal, the Fieldses argue that summary judgment was improper because the record established genuine issues of material fact. Summary judgment is improper if "[t]he non-movant ... show[s] that there is a genuine dispute as to the facts underlying the movant's right to judgment." *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 382 (Mo. banc 1993).

■ To make a *prima facie* case of intentional misrepresentation, a plaintiff must establish that the defendant made a material false representation, while either knowing that the information was false or being ignorant of its truth, and intending for the plaintiff to act upon the representation in a manner reasonably contemplated. *Colgan v. Washington Realty Company*, 879 S.W.2d 686, 689 (Mo.App.1994). The plaintiff must also establish that he or she was ignorant of the representation's falsity and that he or she reasonably relied on the representation as being true and that this reliance was a proximate cause of his or her injury. *Id.*

■ Crawford's argued to the circuit court that the Fieldses failed to establish a genuine issue of whether it made a false representation and whether their reliance on the alleged misrepresentation was reasonable. It contended that it misrepresented nothing because the car's odometer reading of 47,867 was "correct" given its inability to reset the odometer to the car's actual miles and because it marked the box on the odometer disclosure statement indicating "odometer discrepancy." It also asserted that, to the extent it did misrepresent anything, the Fieldses acted unreasonably in not investigating why the odometer disclosure statement indicated an odometer discrepancy. We disagree.

Alonzo Fields asserted in his affidavit that no one at Crawford's told him before he bought the car that its actual mileage was 70,843 miles. He said that the odometer indicated that the car had been driven "a little over 47,000 miles" and noted that the retail buyer's order indicated that the mileage was 47,867. Fields also said that had he known that the car's actual mileage was more than 70,000, he would not have bought it. Fields averred that he did not know what the car's actual mileage was because no one at the dealership told him and that he believed that the mileage indicated on the sales documents, which matched the car's odometer reading, was the actual mileage on the car.

Fields admitted that Stock reviewed the odometer disclosure statement with him. Although that statement warned him of an "odometer discrepancy," Fields did not ask what the discrepancy was. Fields acknowledged that someone at Crawford's told him that the car's previous owner had replaced the original odometer and that he assumed that this was the discrepancy to which the warning referred. He said that he assumed that the odometer had been reset to reflect the actual mileage. The representations Crawford's made on its buyer's retail order would not necessarily dislodge that assumption. Crawford's told the Fieldses on that order form that the odometer's reading was the same as when Crawford's received it, save for miles for testing and demonstrations. Although Crawford's had changed the odometer for the previous owner and had in

---

**1.** All statutory references are to the Missouri Revised Statutes 1994.

its file the previous owner's affidavit disclosing the odometer change, Crawford's represented on the order form that it had no knowledge that the odometer had been altered or disconnected before it bought the car. Crawford's also represented that it had no way of ascertaining the odometer's correctness. A jury could reasonably conclude that Crawford's made material misrepresentations to the Fieldses.

As to the second part of their contention—that the Fieldses unreasonably relied on any misrepresentations, "[t]he right to rely on a representation is ordinarily a question of fact for the jury." *Colgan*, 879 S.W.2d at 690. Given Crawford's representations on the buyer's retail order, a jury could reasonably conclude that the Fieldses' failure to investigate was reasonable. Hence, we conclude that the Fieldses established a genuine issue of material fact, and Crawford's motion should have been denied as to Count I.

■ As to Count II (state odometer fraud law), Crawford's concedes that it failed to comply with § 407.536.1 by not preparing an affidavit stating "all facts known ... concerning the true mileage of the motor vehicle." Crawford's asserts, however, that the Fieldses did not present any evidence of fraudulent intent. We disagree.

In addition to not preparing the required affidavit, Crawford's made representations in the buyer's retail order which a jury could conclude misled the Fieldses. Alonzo Fields said that no one at Crawford's told him that the mileage was over 70,000. All of the sales documents prepared by Crawford's indicated that the car's mileage was 47,867; none of them showed the actual mileage. These facts were sufficient to raise a question of fact as to the dealer's intent. *See Lair v. Lewis Service Center, Inc.*, 428 F.Supp. 778, 779–80 (D.Neb.1977).

Alternatively, Crawford's contended that Count II had to fail because it was beyond the two-year statute of limitations. The Fieldses respond that their lawsuit was timely because they could not have reasonably discovered Crawford's fraud until September 1992 when Crawford's service department informed them of the car's actual mileage.

■ Section 407.546.2 says that a plaintiff must initiate a lawsuit alleging statutory odometer fraud "within two years from the date on which the liability arises." This apparently is a case of first impression in Missouri. The two-year statute of limitations in § 407.546 is the same as the limitation period under the federal odometer statute, 15 U.S.C. § 1989(b), which limits an action to "two years from the date on which the liability arises." Under the federal statute, the limitation period begins to run on the date the plaintiff discovers or should have discovered the fraud. *See, e.g., Tye v. Spitzer–Dodge*, 499 F.Supp. 687, 693 (S.D.Ohio 1980); *Utah by Wilkinson v. B & H Auto*, 701 F.Supp. 201, 203 (D.Utah 1988). We are persuaded by these cases. We conclude that liability arises under § 407.546.1 on the day the plaintiff discovered or should have discovered the odometer fraud.

■ The Fieldses filed their petition on November 16, 1993, alleging that Crawford's knew that the car's actual mileage was not reflected on the odometer when it sold them the car but did not disclose the true mileage to them. Although Crawford's acknowledges its failure to complete the required affidavit, it claims that the limitation period began to run on May 26, 1990, when the Fieldses bought the car because the Fieldses had constructive notice of the odometer discrepancy. We have already rejected this contention in dealing with Count I. Alonzo Fields said that he was not told the car's actual mileage until September 1992. Stock, Crawford's salesman, admitted that the dealership did not give the Fieldses any documents showing the actual mileage. Indeed, the buyer's retail order represented that Crawford's had no knowledge of any odometer discrepancy.

Viewing the evidence in the light most favorable to the Fieldses, we find a genuine issue of material fact as to when the Fieldses

discovered or should have discovered that the actual mileage on the vehicle was 70,843. Assuming, as the Fieldses contend, that they did not discover the odometer discrepancy until September 1992, the action was commenced within the two-year limitation period. Accordingly, it was improper for the circuit court to grant summary judgment on the basis that the claim was time-barred.

The order of summary judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.