**Linda McMILLIN, Appellant,**

v.

**AMERICAN FAMILY INSURANCE COMPANY, Respondent.**

**No. WD 53427.**

Missouri Court of Appeals,
Western District.

July 8, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 2, 1997.

Gerald L. Thompson, Kansas City, for appellant.

William H. Sanders, Jr., Shelley A. Runion, Kansas City, for respondent.

Before BERREY, P.J., and SPINDEN and SMART, JJ.

BERREY, Presiding Judge.

Linda McMillin appeals the trial court's order granting summary judgment in favor of American Family Insurance Company (American Family) on McMillin's claims of breach of contract, breach of statutory duty under §§ 379.140 and 379.160, RSMo 1994, vexatious refusal to pay, and intentional misrepresentation. The trial court found that McMillin's acceptance of a settlement check from American Family constituted an accord and satisfaction, and thus barred her claims. McMillin alleges five reasons why the court should not have granted summary judgment: 1) there are genuine issues of material fact in dispute; 2) there was not an accord and satisfaction because of the existence of fraud or misrepresentation in the inducement; 3) there are genuine issues of material fact regarding her intention to reach an accord and satisfaction; 4) American Family breached its duty under the Unfair Claims Settlement Practices Act by misrepresenting facts to McMillin; and 5) the defense of accord and satisfaction did not apply to McMillin's claim of intentional misrepresentation.

McMillin resided at a home in Blue Springs. American Family was McMillin's homeowner's insurer, and she had a homeowner's policy through them that provided coverage in case of a fire. The policy limits

were $136,700 on her house, and $102,600 on her personal property.

On June 2, 1993, a fire damaged McMillin's home. McMillin contacted her American Family agent, who made arrangements to secure the property. The next day, McMillin met with two American Family adjusters, Michael Greer, who was responsible for handling McMillin's personal property claim, and J.R. Reeder, who was responsible for handling McMillin's dwelling claim. Reeder gave McMillin a $3,000 check to cover essential purchases.

During their meeting that day, Reeder told McMillin that she was insured for $136,700, and he was sure that she could rebuild for that amount. At no time during this conversation, or any of their later conversations, did they discuss whether it might cost more than her policy limit to rebuild the house, as Reeder considered the damage to the house a partial loss. Reeder told McMillin that American Family would assist her in getting construction bids, and would rebuild her house if she so desired. He estimated that it would take at least six months to rebuild. Reeder also told McMillin that if she chose not to rebuild, American Family would pay her a cash settlement consisting of the cost to rebuild, less a 15% deduction.[1]

Because McMillin did not have a contractor she preferred to use, Reeder contacted two contractors and asked them to make estimates on the cost to rebuild McMillin's home. McMillin rejected the contractors' estimates. In mid-June, 1993, Reeder prepared an investigation report in which he estimated that the initial settlement value of the loss was $85,000 to $90,000, and the total anticipated cost to rebuild would be between $95,000 to $100,000. McMillin testified at her deposition that she believed the house was a total loss based upon what someone at a restoration company told her.

Immediately after the fire, McMillin contacted Carolyn Morris, a public adjuster. Morris gave McMillin advice regarding McMillin's legal rights and obligations. Several months later, McMillin entered into a contract with Morris. Pursuant to their con-

tract, Morris was entitled to receive a percentage of McMillin's settlement with American Family.

In mid-July of 1993, McMillin decided not to rebuild her house because of "some family situations." She testified at her deposition that her decision not to rebuild had to do with other things in her life unrelated to how much money she was going to get out of the settlement with American Family. However, she also testified that she chose not to rebuild because of "personal responsibilities and very little communication with American Family as to what my duties would be in regards to rebuilding this house, what the procedure would be, so on." She contacted the original builder of the house to obtain a list of contractors who purchased fire reconstructions. The original builder purchased the house on July 18, 1993, for $32,500, rebuilt it, and sold it.

In mid to late July, 1993, Reeder and McMillin discussed settling her claim. He told her that he would have difficulty getting her more than $60,000 if she chose not to rebuild her house. McMillin told him that she would not take $60,000. Several days later, Reeder contacted McMillin, and told her that he would like to settle her claim. He reiterated that she had only a 50% to 60% loss. She told him that she would not take less than $75,000. Reeder told McMillin that he did not think he could get that much for her, but he would try to get approval for that amount. On or about July 29, 1993, Reeder called McMillin, and told her he was printing her a check for $75,000. He told her that she did not need to sign a release. Reeder also instructed McMillin to write the following letter and send it to him at his home: "This is to acknowledge that I choose to 'cash out' for the amount of $75,000.00 instead of rebuilding my home ..." Reeder mailed McMillin the $75,000 check, which McMillin cashed. McMillin testified during her deposition that she understood when she accepted the check that she was taking $75,000 instead of rebuilding her house, and the $75,000 represented a settlement for her structure loss.

---

1. The record is unclear whether the 15% deduction was for overhead or depreciation. The spe-
cific reason for the 15% deduction is irrelevant for purposes of this appeal.

McMillin filed this lawsuit on February 14, 1995, seeking additional payment on her dwelling claim, namely, the difference between her policy limit of $136,700 and the $75,000 Reeder sent her in July of 1993, plus accrued interest. She also sought additional compensation for her personal property loss and her living expenses. The parties settled McMillin's personal property claim and her additional living expenses claim on April 18, 1996, leaving only her dwelling claim in dispute.

McMillin testified in her deposition that communication between her and Reeder was not good. She said that she felt intimidated by him, he talked down to her, he was short and abrupt with her, he was "strictly business," and she did not like his attitude. She said that she did not get cooperation from American Family and she was displeased because nobody would explain her policy to her. She also testified that she thought that if she chose to rebuild her house, they were going to dump lumber in her yard and she was going to have to "nail the boards into the wall" herself. However, when American Family's counsel asked McMillin whether she actually thought she was going to have to rebuild the house herself or whether she was exaggerating, McMillin replied, "Of course I was exaggerating." She also said that there was never any point in time when she asked Reeder to do something and he would not do it, nor were there any questions she asked that he would not answer. Further, she repeatedly said that she was aware and understood that her options were 1) to have **American Family** rebuild her home, and 2) if she decided not to rebuild, American Family would pay her the cost to rebuild minus depreciation or overhead.

On July 18, 1996, American Family filed a motion for summary judgment, asserting that McMillin's acceptance of the $75,000 cash payment as settlement of her claim against American Family for the fire damage to her house on June 2, 1993, constituted a valid accord and satisfaction, and thus it barred McMillin from asserting any further claim. The trial court agreed, and sustained the motion on August 29, 1996. In its order, the court stated the following:

> Under these facts, the Court finds that an accord and satisfaction exists pursuant to Missouri law. [McMillin] negotiated her claim. The parties intended the $75,000 payment to resolve [McMillin]'s dwelling claim. The check was tendered in payment on the express condition that the acceptance of the check was acceptance in full. The Court finds that all claims have been resolved as a result of this accord and satisfaction and as a result of the settlement agreement entered into by the parties on April 18, 1996.

This appeal followed.

McMillin's argument on appeal is essentially that summary judgment based on American Family's defense of accord and satisfaction is improper because genuine issues of material fact remain regarding whether an accord and satisfaction was actually reached, and whether American Family intentionally misrepresented facts to McMillin that would avoid the accord and satisfaction.[2] Specifically, McMillin argues 1) that Reeder misrepresented to McMillin that the damage to her house was $75,000 when he knew that the damage was actually between $95,000 and $100,000; 2) that American Family failed to disclose to McMillin that her insurance policy required American Family to pay to her the full cost to repair or replace her home, without a 15% deduction; 3) that § 379.150, RSMo 1994[3] required American Family, not

---

**2.** McMillin also argues that the trial court should not have granted summary judgment because American Family breached its duty under the Unfair Claims Settlement Practices Act in § 375.1000 to § 375.1018, RSMo 1994 to provide McMillin with reasonable assistance regarding her rights under her insurance policy. This argument is without merit, as § 375.1000.2 clearly states that nothing in the act "shall be construed to create or imply a private cause of action for violation of sections 375.1000 to 375.1018."

**3.** This statute provides as follows:

> Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured.

McMillin, to repair her home for her if she elected; and 4) that American Family did not tell McMillin that her insurance policy had the Guaranteed Building Replacement Coverage provision that required American Family to pay the total cost to repair her home without regard to the $136,700 policy limit.

Appellate review of an order granting summary judgment is *de novo. Rice v. Hodapp,* 919 S.W.2d 240, 243 (Mo. banc 1996). We need not defer to the trial court's order. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Summary judgment is proper when the movant has established an entitlement to judgment as a matter of law. *Id.* at 382. The non-moving party may defeat the motion by showing that a genuine issue of material fact exists. *Id.* An issue is "genuine" if it is "real, not merely argumentative, imaginary or frivolous." *Id.* We are to review the record in the light most favorable to the non-moving party, and accord the non-moving party the benefit of all reasonable inferences. *Id.* However, we are to take as true the facts supporting the motion for summary judgment unless they are contradicted by the non-moving party's response to the motion for summary judgment. *Id.* at 376.

## I. Existence of an Accord and Satisfaction

■ We first address whether genuine issues of material fact remain on whether American Family and McMillin reached an accord and satisfaction. " 'Accord' is an agreement whereby one party agrees to give or perform, and the other to accept, in satisfaction of a claim arising from a contract or tort, something other than or different from what he is or thinks he is entitled to." *Schroeder v. Dy–Tronix, Inc.,* 723 S.W.2d 934, 936 (Mo.App.1987). " 'Satisfaction' is

the performance of such agreement." *Id.* An accord and satisfaction must meet basic contractual requirements. *Id.*

■ American Family cites the following facts in its motion for summary judgment that support the finding of an accord and satisfaction: 1) McMillin told Reeder that she was not going to rebuild her house, and she would not take less than $75,000 from American Family; 2) Reeder told McMillin that he was printing her a check for $75,000; 3) McMillin wrote and signed a letter acknowledging that she was choosing to take $75,000 instead of rebuilding her house; 4) Reeder mailed McMillin the check for $75,000; 5) McMillin understood that she was taking the $75,000 as a settlement for her structure loss; 6) McMillin received, accepted and cashed the check; and 7) McMillin knew when she accepted the $75,000 payment that she was not expecting any more money from American Family for her structure loss. American Family attached materials from the record, mainly McMillin's deposition, to support these facts. These facts support a judgment for American Family as a matter of law.

McMillin's response to American Family's motion for summary judgment does not refute these facts. She does qualify the first fact by saying that she told Reeder she would not rebuild and would not accept less than $75,000 "[b]ased on the omission from Mr. Reeder regarding [McMillin]'s right to recover under the Policy and the misinformation about the obligations of the insurance company with respect to payment." McMillin does not cite any support for this qualification. She qualifies the fifth, sixth and seventh statements by adding the phrase "[w]ith the information that she had been provided by American Family up until that time" before each statement. Although McMillin does not cite any portion of the record to support these assertions,[4] she did make those qualifying statements in her deposition with regard to the fifth and seventh statements. However, these qualifying statements do not refute that American Fam-

---

4. Rule 74.04(c)(2) mandates that the response to a motion for summary judgment "shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits."

ily offered to send McMillin a check for $75,000 as a settlement for her structure loss, and McMillin accepted and cashed the check. American Family established that the material facts indicative of an accord and satisfaction were not in dispute, and McMillin failed to provide competent evidence that showed a "plausible, but contradictory, version" of at least one of the essential facts supporting the finding of an accord and satisfaction. *ITT Commercial Finance*, 854 S.W.2d at 382.

## II. Intentional Misrepresentations by American Family

■ Having found that American Family established an accord and satisfaction as a matter of law, we now turn to McMillin's contention that American Family intentionally misrepresented facts to her that induced her to settle for an amount less than one to which she was entitled under her policy. If American Family intentionally misrepresented material facts to McMillin, the accord and satisfaction will be avoided. See *Riccardi v. United States Fidelity & Guaranty Co.*, 434 S.W.2d 737, 740 (Mo.App.1968). Specifically, she claims 1) that Reeder misrepresented to McMillin that the damage to her house was $75,000 when he knew that the damage was actually between $95,000 and $100,000; 2) that American Family failed to disclose to McMillin that her insurance policy required American Family to pay to her the full cost to repair or replace her home, without a 15% deduction; 3) that § 379.150, RSMo 1994 required American Family, not McMillin, to repair her home for her if she elected; and 4) that American Family did not tell McMillin that her insurance policy had the Guaranteed Building Replacement Coverage provision that required American Family to pay the total cost to repair her home without regard to the $136,700 policy limit.

To make a *prima facie* showing of intentional misrepresentation, McMillin must demonstrate that American Family made a material false representation, American Family knew that the information was false or was ignorant of its veracity, American Family intended that McMillin "act upon the representation in a manner reasonably contemplated," McMillin was ignorant of the falsity of the representation, McMillin reasonably relied on the misrepresentation as being true, and her reliance on the misrepresentation was the proximate cause of her injury. *Fields v. Mitch Crawford's Holiday Motors Co.*, 908 S.W.2d 877, 879 (Mo.App. 1995).

American Family argues that the facts McMillin claims were not disclosed to her or were incorrectly disclosed to her were not material, and were not supported by the record. With regard to the first allegation, that Reeder misrepresented to McMillin that the amount of damage to her house was $75,000 and not the $95,000 to $100,000 figure he had listed in his investigation report, we agree with American Family. Two contractors submitted bids on the cost to repair McMillin's home; yet the parties used neither bid. McMillin did not have a contractor she preferred to use. The policy contains the following provision for hiring an appraiser when the parties do not agree on the amount of the loss:

6. **Appraisal. If you** and **we** fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the **insured premises** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**.

(emphasis in original). Neither American Family nor McMillin used this procedure. Instead, McMillin chose to make a demand on American Family for $75,000. McMillin's deposition testimony indicates that it was McMillin, and not Reeder, who offered the $75,000 figure.

■ McMillin next asserts that American Family misrepresented her policy provision regarding payment in the event of a partial loss. McMillin testified in her deposition, and American Family lists as an uncontroverted fact in their motion for summary judgment, that Reeder told McMillin that if she chose not to rebuild, American Family would pay her the cost to rebuild less 15% for depreciation. The policy provisions regarding settlement options are as follows:

4. **Loss Value Determination.**

.  .  .  .  .

d. **Settlement Limitations—Buildings—Personal Property.** If **you** decide not to repair or replace the damaged property, settlement will be on an actual cash value basis, not to exceed the **limit** applying to the property.

.  .  .  .  .

5. **Our Settlement Options.**

In the event of a covered loss, **we** have the option to:

a. make a cash settlement for all or part of the damaged property; or

b. pay the cost to repair, rebuild or replace all or the necessary part(s) of the damaged, destroyed or stolen property with like property, as of the time of loss, less an allowance for depreciation when replacement cost coverage doesn't apply.

In the event of a partial fire loss to covered property, at **your** option **we** will pay **you**, up to the **limit** of this policy, the actual cost of the damage or repair the damage, so that **your** property is returned to the same condition it was prior to the fire.

(emphasis in original).

■ The policy does not allow a deduction for depreciation in the event of a partial fire loss. Moreover, even if the policy did allow a deduction from the actual cost to rebuild, that provision would be inoperable because it would conflict with § 379.150. As we stated earlier, § 379.150 mandates that an insurer pay "a sum of money equal to the damage done to the property, or repair the same ..." To the extent that a provision in the insurance policy is inconsistent, the statute controls. *Abercrombie v. Allstate Insurance Co.*, 891 S.W.2d 838, 840 (Mo.App.1994). Neither the insurance policy nor the statute allowed American Family to take a 15% deduction for depreciation or overhead. McMillin testified at her deposition that she understood that the $75,000 represented what Reeder was telling her was the cost to rebuild less depreciation. In her response to American Family's motion for summary judgment, McMillin asserts that Reeder's representation regarding a deduction for depreciation is contrary to the provisions of the policy. McMillin created a genuine issue of material fact on the issue of whether American Family intentionally misrepresented the amount to which McMillin was entitled under her policy and § 379.150; hence, American Family's motion for summary judgment should have been denied with regard to Count IV, the intentional misrepresentation claim of McMillin's third amended petition.

■ McMillin's contention that American Family represented to her that she was going to have to physically rebuild her house, and therefore she relied on that statement in choosing not to rebuild, is without merit. Although McMillin testified that she did not understand what her responsibilities would be in regard to rebuilding her house, she also repeatedly testified at her deposition that she understood that **American Family** would rebuild her house. Her conflicting testimony is insufficient to establish a genuine issue of fact as to whether American Family intentionally misrepresented that McMillin would have to rebuild her house herself. "[A] party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact." *ITT Commercial Finance*, 854 S.W.2d at 388.

■ Finally, McMillin asserts that American Family intentionally misrepresented her coverage under the policy by not telling McMillin that her policy contained a Guaranteed Building Replacement Coverage provision that required American Family to pay the total cost to repair her home without regard to the $136,700 policy limit. The Guaranteed Building Replacement Coverage provision is as follows:

4. **Loss Value Determination**

.    .    .    .    .

b. **Replacement Cost—Buildings.** Loss to covered buildings which have a permanent foundation and roof will be settled at replacement cost without deduction for depreciation, subject to the following:

(1) If at the time of loss, the Guaranteed Building Replacement Coverage applies, **we** will pay, after the application of any deductible amount, the full cost to repair or replace the damaged building without deducting for depreciation and without regard to the **limit**, but not exceeding the smaller of the following amounts:

(a) the cost to replace the damaged building with like construction for similar use on the same premises; or

(b) the amount actually spent for necessary repair or replacement of the damaged building.

(2) If at the time of loss, the Guaranteed Building Replacement Coverage does not apply and the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, **we** will pay, after the application of any deductible amount, the full cost of repair or replacement and without deducting for depreciation, but not exceeding the smallest of the following amounts:

(a) the **limit** in this policy for the building, including any additional amount of insurance as provided by the Inflation Protection Coverage;

(b) the cost to replace the damaged building with like construction for similar use on the same premises; or

(c) the amount actually spent for necessary repair or replacement of the damaged building.

(emphasis in original).

McMillin testified that the issue of whether the cost to rebuild was going to cost more than her $136,700 policy limit was never mentioned in her discussions with Reeder because Reeder considered the damage to the house to be a partial loss. She also testified that no one ever told her that the cost to rebuild her home would be more than $136,000. That the policy required American Family to pay the full cost to rebuild without regard to the policy limit was irrelevant. McMillin did not demonstrate a genuine issue of fact on the materiality of American Family's failure to tell her about the Guaranteed Building Replacement Coverage provision.

Because McMillin did create a genuine issue of material fact on the issue of whether American Family intentionally misrepresented the amount to which she was entitled under the policy and § 379.150, the order of summary judgment is reversed with regard to Count IV of McMillin's third amended petition, and the cause remanded for further proceedings consistent with this opinion.

All concur.